## MARTIN HARDIN v. HO-YO-PO-NUBBY'S LESSEE.

An attorney is an officer of court, and responsible to the court for the propriety of his professional conduct, and the proper use of the privileges he has as such. No warrant of attorney is required by our laws or practice to enable him to appear for and represent a party in court; for he is permitted by almost universal practice in this country to do so under verbal retainer, and it is only in cases of clear want of authority or abuse of privilege, that he is held to be incompetent to institute a suit, or to represent a party in court.

The presumption is in favor of the authority of an attorney to bring a suit, or appear in a case, and though he may be required to show it, yet if he acts in good faith, and the want of authority is not manifest, he will not be held to have acted without authority, because it is not shown according to strict legal rules.

All that is required to be shown in such cases, in the first instance, is, that the attorney has acted in good faith, and under an authority appearing to be genuine, though informal; and it devolves upon the party impeaching the authority, to show by positive proof that it is invalid, and insufficient in substance.

A power of attorney purporting to be signed by a party, and acknowledged before and certified by the clerk of the circuit court of the District of Columbia, whose official character was attested by the chief judge of that court, who was certified to be such by the secretary of State, under the seal of his office, is insufficient for that purpose, because there is no law of this State authorizing that mode of authenticating such instruments, and consequently, when offered in evidence, the execution must be proved by the rules of the common law.

As to the validity of the certificate of the register of the land-office at Pontotoc, showing the location of the land under the 6th article of the treaty with the Chickasaw Indians, which was offered in evidence by the plaintiff's lessor in the circuit court, see the case of *Wray* v. *Doe*, 10 S. & M. 452, in which this

court decided such to be competent testimony, and which decision is here affirmed.

The certificate shows that the location of the land in behalf of plaintiff's lessor by the agent, was in June, 1838, before the register and receiver were furnished with a list as required by the treaty, which was not done until the 2d of November, 1838. This list is provided for in the first clause of the sixth article of the treaty, in these words: "Also reservations of a section of land to each, shall be granted to persons male and female, not being heads of families, who are of the age of twenty-one years and upwards, a list of whom within a reasonable time shall be made out by the seven persons hereinbefore mentioned, and filed with the agent; upon whose certificate of its believed accuracy, the register and receiver shall cause said reservations to be located upon lands," &c.: — *Held*, that the treaty does not require the list to be filed with these officers before the location can be made. All that is required to be filed with those officers is, the agent's certificate of the believed accuracy of the list.

The certificate is evidence of itself that all the prerequisites were complied with, and a violation of duty on the part of the officers who made the location is not to be presumed.

The diagram or plat of land offered in evidence was only admissible on the ground that it was " a record appertaining to the land-office," and it was not susceptible of parol explanation in its material parts.

In error from the circuit court of Pontotoc county; Hon. Hugh R. Miller, judge.

The facts of this case will be found in the opinion of the court, and in the case of *Wray* v. *Doe*, 10 S. & M. 452, where many of the same questions were raised by counsel, and decided by this court.

*Jacob Thompson* and *Charles D. Fontaine* for appellant.

The first bill of exceptions taken in this cause discloses a fatal error in the proceedings therein in the circuit court.

For the causes set forth in the affidavit of the agent of the defendant in the court below, the court properly granted a rule upon the attorneys of the plaintiff to produce the authority under which they prosecuted the suit. 4 How. 333, and *Cartwell* v. *Mennefee*, 2 Pike, 355. But improperly held that the authority produced by them, in answer to the rule, was sufficient. This authority was a power of attorney under seal given by plaintiff's lessor to Eli Ayres, by whom plaintiff's at-

torneys were retained.   The acknowledgment of its execution was made before, and certified by, a justice of the peace of the State of Arkansas, to whose official character there is also a certificate of a clerk of a county court annexed.   And this was all the evidence of its execution offered.   There is no statute of this State which authorizes this mode of authenticating such instruments, except in the cases of powers of attorney executed beyond the jurisdiction of the United States.   Hutch. Co. 864.

Our legislature has provided no other mode for proving their execution than is to be found in the prevailing practice of examining witnesses *ore tenus*, and in the statutes regulating the manner of taking depositions.   The general rule is, that a deed or other writing cannot be given in evidence without proof of its execution.   1 Cow. & Hill's Phillips, 464; and as to what proof is necessary, Ib. 464–466; 3 Ib. n. 878, 882, p. 1263–1268; 2 Ib. n. 185, p. 189.

And when an attorney at law, required to produce his authority to prosecute a suit, offers a power of attorney as such, its execution must be proved.   *Timmerman* v. *Morrison*, 14 Johns. 369; *Carriff* v. *Myers*, 15 Ib. 369; *Hovey* v. *Dean*, 1 Shepl. 31; *Gaul* v. *Groat*, 1 Cow. 113.   In this last case, it was held that the agent, failing to testify to his own authority, afforded ground of presumption against its existence.   *Tullock* v. *Cunningham*, 1 Cow. 256; *Dixley* v. *Butts*, 2 Ib. 129.   In the case of *Rogers* v. *Park*, 4 Humph. 480, where the rule was released, the attorney held his authority directly from his client, and not mediately through an agent, as in this case.

The second bill of exceptions was taken at a subsequent term to the decision of the court below, refusing to allow Jacob Thompson, on his application as agent of plaintiff's lessor, to dismiss the suit.   To prove his authority to do so, he offered in evidence a special power of attorney executed by plaintiff's lessor, after the institution of the suit, in the presence of Sampson Fulsom and B. H. Epperson, as subscribing witnesses.   It was regularly proved before the clerk of the circuit court in the District of Columbia, whose official character is certified to by Wm. Cranch, chief judge of the circuit court of said district;

48 *

and the official character of the judge is certified to by the secretary of State of the United States, under the seal of the department of State.

The authentication of this last power of attorney is doubtless liable to the same objection of insufficiency as the other. Neither mode of proving their execution is recognized by any statute, or conforms to the rules of practice indicated by the authorities before cited. The record discloses no other probable ground to have determined the court below in refusing the application to dismiss the suit. It is difficult to discern the reasoning which can justify the court below in holding that proof of the execution of the one was sufficient to authorize the prosecution of the suit, and that similar (certainly not more defective) proof of the execution of a subsequent authority was insufficient to authorize its dismission. The latter decision seems irreconcilably in conflict with the former. One or the other must be erroneous. It is proper to remark, however, that the two incongruous decisions in the same cause were made by different gentlemen of the bar, who were called to preside therein, as special judges, at different terms of the court.

The remaining errors relied on by appellant arise on the third bill of exceptions taken in the court below to the opinions of the court, in reference to the competency of the evidence produced on the trial, and to the charges given to the jury.

One of the principal questions before the jury was, whether plaintiff's lessor has been located according to the provisions of the 6th article of the treaty with the Chickasaw Indians, which is in these words: " Reservations of a section each shall be granted to persons, male and female, not being heads of families, who are of the age of twenty-one years and upwards, a list of whom, within a reasonable time, shall be made out by the seven persons hereinbefore mentioned, and filed with the agent, upon whose certificate of its believed accuracy, the register and receiver shall cause such reservations to be located upon lands fit for cultivation, but not to interfere with the settlement rights of others." 7 U. S. Stat. at Large, p. 450.

If he was located in the manner pointed out by this article of the treaty, the legal presumption is that he was a reservee

under its provisions, and that all other prerequisites of the treaty, necessary to give validity to the location, had been complied with. Opinion of the court in *Wray* v. *Doe*, 10 S. & M. 454.

But this, like every other presumption in favor of the acts of ministerial officers, may be rebutted by other competent testimony, satisfactory to the minds of the jury.

Is there sufficient proof that the plaintiff's lessor had been located by the register and receiver on the land in controversy, in accordance with the requirements of the treaty?

The certificate of Edmondson, relied on by plaintiff in the circuit court, shows that the location, if made at all (which is denied), was done by the agent on the 29th of June, 1838, before he furnished the register and receiver with the list on November 2d, 1838.

The register and receiver only are authorized by the treaty to locate reservations. A location, therefore, made by any other officer, is a nullity. This point was altogether overlooked by Mr. Justice Clayton, in delivering the opinion of the court in the case of *Wray* v. *Doe* above cited, although distinctly presented by Mr. Wood in argument.

It is contended that the court erred in permitting the certificate of Edmondson to be read to the jury, because if it is evidence at all, it is certainly not the best evidence to prove a location under the treaty.

The 12th article of the treaty requires that locations shall be entered on the general plat, required to be kept, when they are made by the register and receiver; which general plat, or a certified copy from it, would have been the best evidence of a location having been made. It is therefore submitted, whether a certified copy from the list furnished by Benjamin Reynolds, agent, is in any view competent to prove a location made by the register and receiver.

The treaty requiring entries of locations to be made on the general plat, the court below properly allowed defendant's counsel to read to the jury a certified copy of the township embracing the land in controversy; but grossly erred in refusing to allow defendant's attorneys to examine the keeper of the rec-

ords as to the meaning of the figures on the copy which had been read. By such explanation only could the jury determine whether the copy of the plat proved the existence or absence of an entry of a location on it of the land in controversy. And without explanation (all the entries on it being in figures), they could not determine whether the entry in pencil contradicted or sustained the construction sought to be given to the certificate of Edmondson, as to the fact that a location had been made. It is a general rule, that records or other written testimony in a foreign language may be translated on the trial by a sworn witness. It is difficult to draw a distinction between this and entries altogether in figures, the meaning of which is known only to the officer using them.

The printed "regulations," and the transcript from the office of Indian affairs, was in part offered in evidence to prove the manner of doing business by the agent, register, and receiver. This, connected with the proof of the two last-named officers, that their manner of doing business conformed to the printed instructions, would have satisfied the jury that the agent, on completing a roll of Indians, invariably transmitted copies, both to the register and receiver and to the secretary of war, with a tract designated as suitable to locate the reservations of the respective Indians, on the roll. And if his suggestion was approved by the department at Washington, and such approval signified to the register and receiver, they then, and not till then, made the location on the general plat, according to the direction of the 12th article of the treaty.

It is admitted that this mode of proceeding was not required by the treaty, and that the register and receiver might have legally made the location, without awaiting the action of the war department. But the question is, Was the location made? and the testimony was certainly competent to go to the jury, for the purpose of disproving that fact. And it was the province of the jury, and not the court, to determine the weight and consideration to which it was entitled.

No authentication was necessary for the printed paper, if the officers acted under the instructions contained in it. The transcript from the office of Indian affairs is duly and properly au-

thenticated by the proper officer of the department, with the seal of the department of the interior annexed. This is the most authentic mode of attesting such records known to our practice.

This transcript from the "original files" from the office of Indian affairs, was also offered for the purpose of showing, not only the absence of the certificate of the agent from the list of Indians furnished by him, and from which Edmondson's certificate is an extract, but also that it was designedly withheld from him for a valid and sufficient reason. He says, in his letter to the commissioner of Indian affairs under date of October 22, 1838, accompanying said original list, that, "I cannot attach the usual certificate to these rolls, but am satisfied that many of the Chickasaws emigrated with the earliest Choctaw emigration." The event referred to, being before the treaty with the Chickasaws was ratified, those who had so expatriated themselves had also lost their tribal rights under the treaty, — a valid reason why the agent withheld his certificate of his "believed accuracy" of the roll in the case of plaintiff's lessor.

Is not the certificate of the agent an essential prerequisite to give validity to a location under the 6th article of the said treaty, even when made by the register and receiver? One of the charges given by the circuit court in the case of *Wray* v. *Doe*, and which Mr. Justice Clayton, in delivering the opinion of the court, says is "evidently prepared with much skill and care," and "correctly decided," declares that the enrolling or placing the name of the plaintiff on the list of persons entitled to land under the 6th article of the treaty, by the chiefs, and his location by the register and receiver on a section of land, is conclusive evidence of his being entitled to land under said article, and also of his title to such section of land.

With due deference to the opinion of the learned judge, we respectfully submit to the court, if such enrolling and location is conclusive evidence of title? if, under the said 6th article of the treaty, the action of the chiefs is not subject to the revision of the agent? and if, without his sanction of the accuracy of the list, the register and receiver can legally make a location?

It is further respectfully submitted to the court, whether the

Hardin *v.* Ho-yo-po-nubby's Lessee.

preëmption arising from such location by the register and receiver, when all perquisites have been complied with, is, in the language of said charge, so conclusive that it may not, as in the case of tax collectors' deeds and other acts of ministerial officers, be rebutted by proof of the omission of any material antecedent act required.

It is with all deference suggested, that the learned judge either was mistaken in relation to the facts on the record in the case cited, or else confounded the provisions of the treaty with the Choctaws with that of the Chickasaws. He says, " The Indians had done all in their power to secure their reservations by having their names put upon the roll. If the agent neglected his duty by failing to annex a proper certificate to the roll before he returned it to the registrar's office, the Indian is not to be prejudiced thereby." There was no evidence that the Indian did any such thing; nor is he required by the treaty to do that or any other act to secure his reservation. Under the treaty with the Choctaws, under which the controversy in *Doe* v. *Coleman*, 4 S. & M. 46, cited by Justice Clayton arose, the Indian was an active agent, and had to " signify his intention," within a given time, to remain a certain period on the land. But under the Chickasaw treaty, the Indian is passive, and is required to perform no act himself to secure his rights. He could only be located by the action of the commissioners and chiefs, the agent and register and receiver.

It is, therefore, respectfully submitted to the court, if the fifth charge asked by plaintiff and given by the court below, without qualification, was not calculated to mislead the jury ? and if the sixth and fourteenth charges are not contrary to law ?

A review of the opinion of the court in the case of *Wray* v. *Doe,* is also respectfully asked.

A most fatal error in the opinion of the court below was, the exclusion from the jury of the deposition of B. H. Epperson and the accompanying statement in writing of the plaintiff's lessor, the execution of which the said deposition was offered to prove. The " objections to the form of taking " said deposition having been waived by counsel for plaintiff, the exclusion of the paper was confined to the reason, that plaintiff's lessor was an

Hardin *v.* Ho-yo-po-nubby's Lessee.

Indian, unacquainted with the language in which his statement is written, and its translation to him was not made by a sworn interpreter. What of that? If he signed it, he is presumed to have understood it, and is bound by the admissions contained in it, until it is shown affirmatively that a fraud has been practised upon him, or that he did not understand its contents. There is no analogy between this and the case of an interpreter - on trial being sworn, with a confused recollection of which principle of practice the court below probably confounded it. If there had been any proof that the plaintiff did not understand the contents of the paper he signed, it was the province of the jury, and not the court, to determine what weight it was entitled to. On the contrary, the deposition proves from circumstances, that he did understand it perfectly.

It is a general rule, that admissions are always binding on the party making them. See *Anderson* v. *Root et al.*

In this case plaintiff's lessor admits and declares that he never authorized the institution of this suit, and has no interest in the land in controversy.

The opinion of the court is earnestly and respectfully desired on all the points raised in argument.

*J. F. Cushman* on the same side.

*R. W. Edmondson* for appellee.

1. There was no error in the instructions asked and given by the court. The following authorities sustain them. 10 S. & M. 452; *Niles* v. *Anderson,* 5 How. 365; *Harris* v. *Newman,* 3 S. & M. 565; *Strother* v. *Lucas,* 12 Peters, 437, 448; *New Orleans* v. *United States,* 10 Peters, 663.

2. The merits of this controversy have been fully settled by this court in *Wray* v. *Doe,* reported in 10 S. & M. 452, and it is unnecessary to enter into argument upon the subject of title. In the case referred to, one half of this section of land was in controversy; and in this suit there is one fourth of the same section in litigation. The title to the whole of this section rests upon the same foundation, and the evidence of title presented to the court was precisely the same in every particu-

lar in both cases. 10 S. & M. 452; 2 How. S. C. U. S. 317, 344; *Wilcox* v. *Jackson*, 13 Peters, 511; *Doe* v. *Watts*, 7 S. & M. 363; *Sessions* v. *Reynolds*, 7 Ib. 130; 4 Ib. 40; *Comegys* v. *Vasse*, 1 Peters, 212; *Saffarrans* v. *Terry*, 12 S. & M. 690.

3. There was no error in the court overruling the motion made by the Hon. Jacob Thompson to dismiss plaintiff's suit. The power of attorney produced by Mr. Thompson to sustain said motion was not proved or authenticated so as to make it admissible as evidence. It is not an instrument required by law to be recorded, and no certificate by a clerk, judge, or other officer would make it admissible. A power of attorney must be proved in the court in which it is offered as evidence either by a witness on the stand, or by deposition, as in other cases.

4. The certified copy from the record offered by plaintiff was objected to and objection overruled by the court, in which there was no error. This certificate is a copy *verbatim et literatim* of the one introduced and read in the case of *Wray* v. *Doe*. It is competent testimony under our statute. How. & Hutch. 565, § 24; 10 S. & M. 452; *Bragnell* v. *Broderick*, 13 Peters, 449.

5. The court correctly refused to let the printed paper headed "Regulations," go to the jury as testimony. 1st, it is wholly irrelevant; 2d, it was not proved or authenticated so as to make it admissible; 3d, the instructions contained therein had no binding force upon the register and receiver. *Wray* v. *Doe*, 10 S. & M. 452.

6. The transcript from the office of the commissioner of Indian affairs was properly withheld from the jury. 1st, it is not the subject-matter of record; 2d, it was not properly and legally authenticated; 3d, it was altogether irrelevant.

7. There was no error in refusing to let the witness state whether the roll produced was or was not a record. This is a question ascertained and determined by the treaty. The subject-matter of record for the office was not left to be determined by this witness. This is not the proper mode for the authentication of a record. 7 U. S. Statutes, 386. It is unquestionably an important paper, without which no Indian location could be supported, and must have been intended to have been

preserved in the land-office.   Must papers be bound up before they can become records ?

8. The objection to the witness explaining the figures and letters in red and black ink on the transcript of the general plat, was correctly sustained.   Oral testimony cannot be introduced to vary, change, alter, contradict, or explain a record. *Bragnell* v. *Broderick*, 13 Peters, 449.

9. There was no error in withholding from the jury that portion of the deposition of B. F. Epperson which was objected to.   1. Because the witness says he did not speak the language of Ho-yo-po-nubby, who was an Indian, and the channel of communication between them was an unsworn interpreter. He then could only repeat what was told him by a third person.   His testimony is hearsay, and for this reason incompetent.   2. Because the witness gave his opinions and reasons why he understood the Indian, and why the Indian understood witness.   This is not legal testimony.   The witness should have stated facts, and not his opinions and reasons, and for this cause his testimony is incompetent.

10. The question is submitted, Had the testimony offered by defendant been permitted to go to the jury, is there in it sufficient to have justified a different finding ?   If not, then certainly its exclusion furnishes no reason why a new trial should be granted.

11. The answer of plaintiff's counsel, under rule of court made, requiring them to produce their authority for instituting this suit, was ample and sufficient, and there was no error in the court discharging the rule.

According to the English practice, no attorney institutes a suit for a party who is capable of acting *sui juris*, without a formal retainer for the purpose.   But according to the universal custom in this country, no such authority is requisite here. Lawyers every day institute suits upon a verbal message or an oral request.   Under this practice, where the answer of counsel shows, upon its face, that they have not acted without authority which appeared to be good, it would seem that the defendant should be required to prove, affirmatively, by the plaintiff

himself, that the suit was instituted without authority. Prob-ably, however, much of the trouble taken in this case might have been avoided by Mr. Thompson, if he had reflected that many of the Indians have the same name.

Mr. Justice HANDY delivered the opinion of the court.

This action was brought by the defendant in error, a Chicka-saw Indian, for a tract of land claimed by him in virtue of a location made in his behalf as a reservee, under the sixth article of the treaty of the 24th of May, 1834, made between the United States and the tribe of Indians of which he was a mem-ber. The plaintiff in error claimed title to the land under a patent from the government, obtained subsequently to the loca-tion, as claimed by the Indian, so that the merits of the case depend mainly upon the question whether the location so con-forms to the provisions of the treaty as to vest a valid title in the defendant in error.

In the progress of the case in the court below, two prelimi-nary questions arose, which first require consideration : —

First. At the instance and upon the affidavit of the defend-ant below, the attorneys for the plaintiff were required, by rule of court, to show their authority for instituting the action. In answer to the rule, they showed that they did so under an em-ployment by one Ayres, who purported to act as the agent of the plaintiff; and they produced a power of attorney signed by the plaintiff in the State of Arkansas, acknowledged by him before a justice of the peace there, whose official character was shown by the certificate of the clerk of the circuit and probate courts of the county where the acknowledgment was made, under official seal. The court held this as showing a sufficient authority in the attorneys to institute the suit, and discharged the rule, to which the defendant excepted.

It is true, as is urged in behalf of the plaintiff in error, that there was not sufficient evidence shown to prove the power of attorney according to strictly legal rules; and if it had been necessary to the suit as a muniment of title, or to make out the plaintiff's case in the usual and regular course of proceeding,

the proof of its execution would have been insufficient to admit it in evidence. But the strict rule of proof is not applicable to the matter under consideration.

An attorney is an officer of court, and responsible to the court for the propriety of his professional conduct, and the proper use of the privileges he has as such. No warrant of attorney is required by our laws or practice to enable him to appear for and to represent a party in court. He is permitted, by almost universal practice in this country, to do so under verbal retainer, and it is only in cases of clear want of authority or abuse of his privilege that he is held to be incompetent to institute a suit or to represent a party in court. The presumption is in favor of his authority, and though he may be required to show it, yet if he acts in good faith and the want of authority is not manifest, he will not be held to have acted without authority, because it is not shown according to strictly legal rules. If this were not so, the greatest inconvenience in practice would continually occur both to clients and attorneys; for suits are frequently instituted by attorneys under the authority of letters from their clients, who are strangers, and whose handwriting is unknown to them, and could not be proved without great trouble and delay. If required in such a case to produce his authority, the production of the letter, though he might be unable to prove the handwriting, would be sufficient; and so of a letter written by a party purporting to be the agent of the plaintiff. All that is required to be shown in such cases in the first instance, is, that the attorney has acted in good faith and under an authority appearing to be genuine, though informal. It then devolves upon the party impeaching the authority, to show by positive proof, that it is invalid, and insufficient in substance. *McKiernan* v. *Patrick*, 4 How. 333; *Rogers* v. *Park's Lessee*, 4 Humph. 480.

We think, therefore, that sufficient authority was shown in the attorneys here, and that the rule was properly discharged.

Second. The defendants then produced to the court a power of attorney, purporting to be signed by the plaintiff, acknowledged before, and certified by the clerk of the circuit court of the District of Columbia, whose official character was attested by the

certificate of the chief judge of that court, who was certified to be such by the secretary of State under the seal of his office, and authorizing Jacob Thompson to dismiss any suit or suits which might be pending in his name, in virtue of which Mr. Thompson appeared and moved the court to dismiss the suit, which was resisted by the counsel for the plaintiff, and overruled by the court.

The defendant in error insists, that this power of attorney could not be admitted in support of the motion without legal proof of its execution; that the certificate of acknowledgment of the clerk, attested by the judge and secretary, was insufficient for that purpose, because there is no law of this State authorizing such a mode of authenticating such instruments, and consequently, when offered in evidence, the execution must be proved by the rules of the common law.

We consider these positions well founded. There is nothing in the step proposed to be taken that took it out of the legal rule in relation to the proof of the instrument on which it was based. The motion was deliberately made, in virtue of a document in the possession of the party making it, where no surprise could be alleged in his behalf, and when he might have prepared himself with the necessary evidence to prove the instrument. He was bound to know that the document as presented was not sufficiently proved, and to come prepared to prove it according to the rules of law. No presumptions existed in favor of its execution, and there was nothing in the circumstances under which the motion was made to entitle the paper to more favorable consideration than is required by strictly legal rules, applicable to the proof of documents relied upon by a party as the foundation of a strictly legal right in a suit pending and on trial. He could not object, that in an effort to apply a rigid legal rule to the plaintiff, a like rule was required as to the evidence on which his motion was founded.

On the trial of the case, the plaintiff's lessor offered and relied upon as the evidence of his title, the certificate of the register of the land-office at Pontotoc, showing a location of the land in his behalf, under the 6th article of the treaty with the Chickasaws. This certificate was objected to by the defendant, but

the objection was overruled, and it was read to the jury; to which the defendant excepted.   The competency of this certificate has already been determined by this court in a suit instituted by this same Indian against another party for a parcel of the same land located and described in it.   In the same case, the validity and legal effect of the certificate, as well as the most of the other points now urged in behalf of the plaintiff in error, were presented and decided by the court.   *Wray* v. *Doe*, 10 S. & M. 452.   Questions thus settled, and determining the rights of a particular party, we do not consider open to review, unless the former decision be palpably erroneous.   This not being the case with that decision, we do not think it proper to hold that it is not the law of this case.

There are, however, some points presented here which were not settled in that case, and which deserve consideration.

1. The certificate relied upon by the plaintiff's lessor to show the location, will be found in the case as reported in 10 S. & M. 454.   It shows a location made on the 29th of June, 1838, in behalf of this Indian, of the entire section of land, (of which the premises in controversy here are part,) and certifies that the same is "a true copy from the list of persons furnished by Benjamin Reynolds, Chickasaw agent, on the second day of November, 1838, to the register and receiver, of Indians entitled to land under the sixth article of the treaty between the United States and the Chickasaw Indians, and of the location of Ho-yo-po-nubby as the same remains of record," in the register's office.

It is insisted in behalf of the plaintiff in error, that this certificate was insufficient to show a location in behalf of the plaintiff's lessor, because it shows that the location, if made at all, was made by the agent in June, 1838, before he furnished the register and receiver with the list required by the treaty, which was done on the 2d of November, 1838.   The list referred to is provided for in the first clause of the sixth article of the treaty, in these words: —

"Also reservations of a section to each shall be granted to persons male and female, not being heads of families, who are of the age of twenty-one years and upwards, a list of whom, within a reasonable time, shall be made out by the seven persons

49 *

herein before mentioned, and filed with the agent; upon whose certificate of its believed accuracy, the register and receiver shall cause said reservations to be located upon lands," &c. 7 U. S. Stat. at Large, 452.

It appears that the location was made before the agent furnished the register and receiver with the list mentioned in the treaty; and the question presented is, whether the treaty requires the list to be filed with these officers before the location can be made. We think that the treaty does not require the list to be so filed. It provides that the list shall be made out by the seven chiefs, and " filed with the agent, upon whose certificate of its believed accuracy, the register and receiver shall cause such reservation to be located." All that is required to be filed with the register and receiver is the agent's certificate of the believed accuracy of the list, and such a certificate could be made without returning the list made by the seven chiefs, and filed with the agent, to the register and receiver.

But it is said, the certificate offered in evidence shows that the location was made by the agent, who had no power to do it, and not by the register and receiver, because it shows that the list of persons entitled was not furnished by the agent to the register and receiver until November, 1838, and that the location was made in June, 1838, and hence that the location could not have been made by the register and receiver. But we have above seen that the location might have been made by the register and receiver upon the certificate of the agent, and without the return of the list to them. The certificate required may have been made by the agent, upon the return of the list to him by the chiefs, and the location may then have been made by the register and receiver upon the list filed with the agent, which list may not have been deposited with the register and receiver for several months afterwards. In the case above referred to, it is held that the location is evidence of itself that all the prerequisites were complied with, and that a violation of duty on the part of the officers who made the location is not to be presumed. And hence such a construction will be given to the certificate offered in evidence as will justify the acts of the officers, and render the location valid.

2. The defendant offered in evidence a diagram of the entire township in which the land in controversy lies, with a certificate signed by the register and receiver, that it was a correct transcript of the original then in their office, designating the different sections which were located as Indian reservations, under the 5th and 6th articles of the Chickasaw treaty. The paper was admitted by the court; and the defendant then introduced James W. Drake, the receiver of public moneys at the land-office at Pontotoc, and asked him to explain to the jury the meaning of certain figures and letters in red and black ink, and pencil marks appearing on the several sections of land as marked out on the diagram; to making which explanation the plaintiff objected, and the objection was sustained, and the defendant excepted. This ruling of the court is assigned for error.

It does not appear for what purpose the explanation was offered, and its relevancy does not therefore sufficiently appear to enable us to determine whether the evidence was competent. But so far as we can understand the object for which it was offered, it was to show by explanation of the letters, figures, and marks on the paper, which were otherwise unintelligible, that the section of land claimed as having been reserved for the plaintiff, had not been so reserved. If this was the object, the testimony was incompetent. The plat of the land was admissible only on the ground that it was " a record appertaining to the land-office," Hutch. Dig. 864, § 3; and as such, it was not susceptible of parol explanation in its material parts; for in order to be a record, it must be certain, clear, and intelligible, and it can be tried by nothing but itself upon bare inspection. Moreover, it was incompetent to show by this kind of evidence, that the land had been disposed of otherwise than as a reservation for the Indian; because, if such were the case, it could have been shown by the regular books and records of entries and sales of lands required by law to be kept in the land-offices; and such evidence, for aught that appears, could have been adduced if the fact sought to be proved by this evidence had existed.

3. The instructions granted at the instance of the plaintiff's

lessor are objected to ; but they are substantially the same as those passed upon and sustained by this court in the case of *Doe* v. *Wray*, and we do not think that they contain error to the prejudice of the defendant's case, under the state of facts presented in the record.

4. It is said that the court erred in rejecting the deposition of one Epperson, offered by the defendant. We have carefully examined the bill of exceptions in reference to this point, and find that it is silent as to whether this deposition was rejected or admitted. Consequently we cannot know what was the action of the court in the matter, and cannot pronounce whether it was proper or improper.

The other questions urged in behalf of the plaintiff in error appear to be settled in the case of *Wray* v. *Doe*, and do not, therefore, require further examination.

The judgment is affirmed.