[Sac. No. 387. Department One.—July 20, 1898.]

In the Matter of the Estate and Guardianship of ROBERT B. CURTIS, a Minor. ROBERT B. CURTIS, Ward, Appellant, v. CHRIS W. DEVOE, Guardian, Respondent.

GUARDIAN AND WARD—DELAY IN ACCOUNTING — LOSS ON INVESTMENT MADE WITHOUT ORDER—GOOD FAITH—FINDING.—It is better for a guardian to render annual accounts, and to take an order of court for investments made for his own protection; but notwithstanding an actual loss upon an investment, by diminution in the value of mortgaged property, for which investment no order of court was had, where the failure to render annual accounts, or to obtain an order of court, does not appear to have caused the loss, and upon rendition of the final account of the guardian, though delayed after the ward's majority, the court found that the guardian had acted in good faith and with ordinary care and prudence in all his transactions, the court is justified in turning over to the ward the assets in the condition in which they were at the time when the ward became of age. In the absence of the evidence, it will be assumed upon appeal that such finding was justified by the evidence, and that it covered an explanation of the delay in the final accounting, it not appearing that such delay was specifically objected to, or caused injury to the ward.

ID.—GUARDIAN'S LIABILITY FOR LOSS.—In case of loss to the estate, the question of the guardian's liability therefor depends much upon the circumstances under which the loss occurred; but a mere failure to render accounts with promptness does not necessarily impose punitive responsibility upon the guardian.

ID.—CESSATION OF GUARDIAN'S AUTHORITY—DUTY AS TO ASSETS.—The author-
ity of the guardian ceases with the majority of the ward; and it is
his duty then to account with the ward and to turn over to him all
assets and choses in action in their then existing condition.

ID.—UNAUTHORIZED BID UNDER FORECLOSURE OF MORTGAGE—LIABILITY OF
GUARDIAN — COMPROMISE OF DEFICIENCY — ELECTION BY WARD. — The
guardian has no authority, after the ward's majority, to proceed
with the foreclosure of a mortgage, without the ward's consent,
and to bid in the property for the ward; and if he does so, the
ward may consider such bid as a conversion of the mortgage, and
may hold the guardian liable for the amount of the bid with in-
terest, at the then cash value of the land, notwithstanding its sub-
sequent diminution in value, upon condition of conveying the land
to the guardian; and where the guardian also assumed, without
authority, to compromise the deficiency judgment, by accepting land
therefor, the ward may elect either to affirm the compromise and
take the land, if deemed for his interest, or to have the land re-
stored, and to look alone to the deficiency judgment.

APPEAL from a judgment of the Superior Court of Tulare
County settling the final account of a guardian.    William W.
Cross, Judge.

The facts are stated in the opinion.

Bradley & Farnsworth, for Appellant.

W. B. Wallace, for Respondent.

CHIPMAN, C.—Settlement of final account of guardian.
The appeal is by the ward upon the judgment-roll alone.    The
court found that the guardian was appointed October 20, 1887,
and was the acting guardian until March 4, 1894, when the
ward came of age; that on May 29, 1896, the guardian filed his
final account and report of his transactions as such guardian
to March 4, 1894, the date of the ward's majority.    The ac-
count as filed showed that the estate received by the guardian
was money.    Upon the hearing some items were disallowed and
some were added, which, together with certain compensation
allowed the guardian, left a balance due the estate of $2.21,
omitting a certain transaction relating to the loan of $1,500,
now made the subject of this appeal.

The court found that on November 16, 1888, the guardian
loaned to one Edward E. Bush and one J. J. Harlow, jointly,
$1,500, taking their note, payable one year after date to the

guardian, bearing interest at one per cent per month, secured by mortgage on certain one hundred and sixty acres of land in Tulare county, to which Bush and Harlow had at the time a perfect title free from all liens, and then of the market value of $2,600, "when times were more prosperous and prices were generally higher than now, and which lasted until about the beginning of 1893"; that in making said loan the guardian acted without order of court, but he was not negligent in any way, but acted with ordinary care and prudence, and the land was ample security for said loan at said time; that interest was fully paid on said loan up to November 16, 1891, but no further payments were made thereon; that on October 31, 1893, the guardian commenced suit to foreclose said mortgage and obtained judgment October 21, 1894, for $2,098 and $244 costs; that "on October 29, 1894, the said land was offered for sale at public auction, and there being no other bidders, said guardian bid in said land in the name of his said ward for $1,500, and upon the return of sale a deficiency judgment was entered in said action against said Bush and Harlow in the sum of $888.50, and a certificate of sale of said land was issued in the name of said Robert B. Curtis (the ward), and thereafter a deed to said land was executed by the commissioner making said sale to said Curtis, which was forwarded to the attorney of said Curtis at New York city; that said guardian could not, after due diligence, collect said deficiency judgment, and said Harlow having died insolvent and said Bush being in imminent danger of insolvency, said guardian accepted in satisfaction of said deficiency judgment lots 26 and 27, block 184, and lots 4, 5, and 6, block 185, in the city of Hanford, Kings county, taking a conveyance of the same directly to himself, and he now holds a perfect legal title to said lots free from any liens . . . . in trust for said Curtis." The court found that the ward never authorized or ratified said satisfaction of said deficiency judgment, but expressly refused to do so; and, although aware of the foreclosure sale and the purchase of the mortgaged premises in his name, the ward refused to confirm or ratify the sale and refused to accept the certificate of sale or the deed, or to accept the land in settlement of his account; he did not, up to the time of the trial, offer to convey the land to the guardian, though

requested so to do, and "refused to do anything to enable said guardian to sell it, claiming that to accept said deed or to reconvey said property might be considered as a ratification of the act of said guardian," but at the trial "the said ward offered to execute a deed of said land to said Devoe so as to divest said ward of whatever title stood in his name."

It was further found that said mortgaged land had greatly depreciated in value "and is not now of a value exceeding $320, as the evidence shows that there is not now any market value for such lands, and said land was worth a little more in October, 1894, than it is now, but there was no evidence of what its value was at that time."

Finding IX is "that in all said transactions said guardian acted in perfect good faith with his said ward and with ordinary care and prudence; that the only account or report rendered or filed by said guardian since February 25, 1888, is his final account and report."

The court found as conclusion of law: "That the account of said ward should be settled by said guardian taking the said land purchased on said foreclosure sale, and paying the said ward in lieu thereof $320, the value thereof; also that he pay said ward said balance of $2.21, making in all $322.21, which the court finds to be due said ward, with legal interest from the nineteenth day of September, 1896, all of which shall be paid within twenty days from the date hereof; and that said ward take the said town lots in Hanford; . . . . that said guardian, within twenty days from the date hereof, execute and deliver to said ward a proper deed conveying to him the legal title of said lots, free from encumbrance"; . . . . "and that said ward, within twenty days from the date hereof, execute and deliver to said Devoe a proper deed conveying to him the legal title to said land foreclosed, free from any encumbrance imposed by said ward"; and judgment was accordingly entered.

Appellant contends that the court should have settled the guardian's account by directing the guardian to pay his ward $2.21 and the further sum of $1,500, with legal interest from November 16, 1891, computed with annual rests, and that the guardian should be compelled to take the one hundred and sixty acres of land purchased at the foreclosure sale and also the lots in Hanford.

· 1. It is claimed by appellant that the guardian did not conduct his trust as required by law, nor manage the estate with ordinary care and prudence, because: 1. He did not render accounts and reports to the court as required by law, citing sections 1754 and 1774 of the Code of Civil Procedure, and *In re Allgier*, 65 Cal. 228; 2. He did not manage his ward's estate with ordinary care and prudence, citing section 249 of the Civil Code and sections 1774 to 1792 of the Code of Civil Procedure.

There is no disagreement between respective counsel as to the duties generally of the guardian. As to these it may be said that the guardian should follow the directions of the statute, and make the accounts and reports therein required of him. His own safety, the requirements of business prudence, and the welfare of the ward and his estate demand this. The statute does not require annual accounts of guardians, but it would be better for all concerned if so made. At the same time we cannot say that a failure to strictly comply with the statute, or neglect to render accounts with some regularity and promptness, necessarily imposes punitive responsibilities upon the guardian. If there be loss to the estate, the question of the guardian's liability therefor depends much upon the circumstances under which the loss occurred. (*Wheeler v. Bolton*, 92 Cal. 159; *Estate of Cousins*, 111 Cal. 441.)

In the present case the failure to render annual accounts, or to take the order of the court for the loan to Bush and Harlow at the time it was made, do not appear to have caused loss or to show want of prudence. The land was found to be ample security, and so remained up to "about the beginning of the year 1893." Interest was promptly paid to November, 1891. No explanation is given in the findings why the guardian delayed foreclosure after November, 1891, until October, 1893, when action was commenced, but the court found, after setting forth the various acts of the guardian from the commencement of his trust to and including his acts relating to the foreclosure and sale, "that in all said transactions said guardian acted in perfect good faith with his said ward and with ordinary care and prudence"; and as to making the loan to Bush and Harlow and accepting the mortgage the court found that "said guardian . . . . was not negligent in any way, but acted with ordinary

care and prudence, and said land was ample security for said loan at said time." We must assume, in the absence of the evidence, and in the absence of any findings of probative facts which are necessarily inconsistent with this finding of good faith and prudence, that it was justified. We think it must be held that up to March 4, 1894, when the ward came of age, and to which time the account was brought, the findings justify the conclusion that the guardian had acted in good faith and with ordinary prudence; and had he promptly filed his account, asking its settlement and his discharge from his trust, we think the findings would have justified a settlement by turning over the estate to the ward in its then condition—with the foreclosure suit then pending—and adjusting the several items of the account as was done by the court. Placing out of view the Bush and Harlow loan, the account as settled showed receipts $2,856.99, and disbursements $2,854.78, leaving a balance due the ward of $2.21. There is no explanation given in the findings of the delay in rendering the account after March 4, 1894, until May 29, 1896. No objection was made to the account because of its being delayed so long, and no injury is found to have accrued to the ward by this delay. The court made findings as to all the contested items of the account, and as to all others it found the account to be correct. There may have been evidence at the hearing explanatory of this delay. The finding that in all the guardian's transactions he acted in good faith and with ordinary prudence and care seems to cover the rendering of his final account, and we cannot say that the mere fact of the delay in making it is sufficient to warrant us in holding that the finding is not sustained in this particular.

2. It is claimed by appellant, and it was found by the court, that the proceedings on foreclosure, after the ward came of age, were without his authority or ratification—both in the matter of bidding in the property at the sale in the name of the ward, and in settling the matter of deficiency judgment by compromise with Harlow and taking the deed to the Hanford lots. There is nothing in the findings to show by what authority the guardian assumed to act after March 3, 1894. We do not think any presumption arises, as claimed by respondent, that Devoe continued to act as guardian by consent and with the approval

of the ward. The findings seem to show the contrary, for the ward refused to consent to or ratify the acts of Devoe.

Section 1753 of the Code of Civil Procedure provides as follows: "Every guardian appointed shall have the custody and care of the education of the minor, and the care and management of his estate, until such minor arrives at the age of majority or marries, or until the guardian is legally discharged." The guardian's power when appointed by the court is suspended by the majority of the ward. (Civ. Code, sec. 254.) By section 1754, subdivision 3 of the Code of Civil Procedure, he is required: "At the expiration of his trust to settle his accounts with the court, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him on such settlement, to the person who is lawfully entitled thereto."

It was said *In re Allgier, supra:* "When a ward attains the age of majority, the office of guardian comes to an end, and it is then the duty of the guardian, and one of the obligations of his bond, to exhibit a final account of his guardianship to the probate court, make a settlement with the probate judge, or with the ward, and deliver all the property in his hands to the ward. (Code Civ. Proc., sec. 1754.) Failure to do this constitutes a breach of his bond, for which he and his sureties are liable *after settlement of the guardianship.*" Action must be brought on the bond within three years from the discharge of the guardian. (Code Civ. Proc., sec. 1805.) Jurisdiction remains in the probate court, after the minor's majority, over the estate in the hands of the guardian for the purposes of an accounting as to transactions during the minority of the ward, but not as to any occurring after the ward has attained his majority. It was so held in the case just cited, and it was said, as to the effect of the ward's having attained majority: "When that event happens the ward is *sui juris,* and the legal liability which attaches to him for any services rendered to him by his guardian arises not out of the relation of former guardian and ward, but out of the contractual relation established by the transactions between them as contracting parties. Such a liability is not enforceable within the jurisdiction of a probate court; the remedy upon it lies, not in a probate proceeding,

but in an action at law." And this seems to be in accord with the general rule. (Woerner on American Law of Guardianship, secs. 94, 101.)

Respondent cites as holding otherwise, *Seaman v. Duryea*, 11 N. Y. 324, and *Pyatt v. Pyatt*, 46 N. J. Eq. 285, and claims that the remarks of the court *In re Allgier, supra,* were *dicta.* In the New Jersey case it was said: "It would be a narrow, not a liberal construction, of the statutory terms which authorize this court to compel guardians 'to account for the estate in their hands,' to say that it can compel such an account only up to the time when the ward becomes of age, and that guardians must 'account for the estates in their hands,' so far as their subsequent dealings with such estates are concerned in some other tribunal." Of this doctrine Mr. Woerner remarks (Woerner on American Law of Guardianship, 340, note 1) that it rests upon cases holding that the probate court was under the statutes vested with full chancery powers. Under our statute (Code Civ. Proc., sec. 1753) the guardian has the custody and care of the minor's person and property "until such minor arrives at the age of majority or marries." We do not think that the clause "or until the guardian is legally discharged" was intended to prolong his control of the person and estate of the minor, for if it did he would have control for one year after the majority of the ward (Code Civ. Proc., sec. 257), and this would be in conflict with the provisions of the Code of Civil Procedure, *supra.* Upon the minor's attaining majority the guardian must then make a settlement either with the court or the ward, and pay over and deliver to the ward all the estate in his hands, "or due from him on such settlement." In point of fact the account here does not include any items after March 4, 1894, and it is to that date that the court has settled it. The court found that the guardian was indebted to the ward in the sum of $2.21, disregarding the loan to Bush and Harlow; it found that that loan was properly made, and that there was no lack of care and prudence in what the guardian did concerning this loan and its enforcement up to March 4, 1894. We are unable to see upon what principle or theory the court, as conclusion of law, decided that the guardian should convey the Hanford lots to the ward, and pay the ward $320 and this small

balance of $2.21; and that the ward should convey the Bush and Harlow lands to the guardian. This adjustment related to transactions occurring after the ward's majority which were wholly unauthorized by the ward.

The guardian took credit in his account for the Bush and Harlow loan of $1,500, and this the court found to be proper, but he had in his control when the ward came of age the note and mortgage given by Bush and Harlow, the subject of the foreclosure suit; the cause had not been tried and was not tried and judgment entered until October 2, 1894. He also had in his possession at that time other property of the ward, to wit, a horse and cart. He should have turned over to the ward the note and mortgage and the chose in action and the horse and cart. The latter he still holds, and can and should deliver to the ward, but the note and mortgage he cannot deliver; neither can he deliver the then pending action thereon, for it was carried to decree, and a sale of the mortgaged property was subsequently made, and the ascertained deficiency was compromised; and all this was without any authority whatever, either as guardian or as agent or trustee of the ward.

While it is true that the settlement of a guardian's account, as we have seen, cannot ordinarily include transactions occurring after the ward has attained his majority, it appears that the guardian, while still in possession of the estate, assumed, without any authority, to conduct the foreclosure proceeding to final judgment, and he bid in the mortgaged premises at $1,500. In doing this he must be held to have determined the value to be that sum. The sale was at auction, and there may have been other bidders. We must assume that the guardian bid the fair cash value at that time, and he cannot be heard to say that it was in fact less than he bid, nor should he be allowed to avail himself of any subsequent depreciation in its value. He chose to convert the note and mortgage and judgment thereon into property of the value of $1,500; indeed, it was in legal effect a conversion to his own use of the ward's property of that value while yet in his possession; and we can see no violation of the general rule as laid down in *In re Allgier, supra,* in authorizing the court to charge the guardian with that amount in his account.

As to the compromise relating to the deficiency judgment, it was equally without authority; but as the ward does not appear to have suffered loss thereby his rights may be fully protected by giving him the option of taking the deed to the Hanford lots or taking the deficiency judgment, in which latter case the title should be restored to Bush, who conveyed the lots to the guardian.

The decree should be modified so as to settle the account as rendered, requiring the guardian to pay over the ascertained money balance of $2.21, and also the further sum of $1,500, with interest from October 29, 1894, at seven per cent per annum, and to deliver the horse and cart; the decree should require the guardian to execute a deed of the Hanford lots to the ward if he should elect to take them; otherwise to convey the same to Bush, and the ward to look alone to the deficiency judgment; the decree should also require the ward to convey to the guardian whatever interest or title there may be in him to the property purchased by the guardian at the foreclosure sale. Thus modified, the decree settling the final account should be affirmed.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion it is ordered that the decree settling the final account be modified in accordance with said opinion, and when so modified it shall stand affirmed.      Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.