STATE EX REL. SHIELDS ET AL., RELATORS, v. SECOND
JUDICIAL DISTRICT COURT ET AL.,
RESPONDENTS.

[No. 1,490]

[Submitted February 2, 1900.  Decided March 12, 1900.]

*Executor—Lease of Decedent's Lands—Authority of Court—
Order—Modification—Revocation—Petition.*

1.  Under Code of Civil Procedure, Sections 2720, 2722, the district court has authority
    to enter an order directing an executor to make a lease of his decedent's lands for
    the term and the rental and to the parties specified in the order.
2.  Under Code of Civil Procedure, Sections 2720, 2722, after the district court has made
    an order directing an executor to make a particular lease specified in the  order, no
    discretion is left to the executor; the duty is obligatory upon him to carry  out the
    order of the court according to its terms.

VOL. XXIV—1

3. Under Code of Civil Procedure, Sections 2720, 2722, the district court has power to modify an order, previously made, as to amount of rental, where the executor and the lessees have agreed to the modification.

4. Under Code of Civil Procedure, Sections 2720, 2722, the court has no power, against the objection of the person designated in an order as the lessee, to revoke an order directing the executor to lease land to such person at a fixed rental, where he has accepted and complied with the conditions of the order, though the executor has subsequently had a more favorable offer.

5. Code Civil Procedure, Sections 2720, 2722, provides that when it appears to the court by a verified petition that it is for the best interests of the decedent's estate to lease its lands, the court may authorize the executor to lease the same. One B., who has acted as spokesman for himself and others in negotiating with the executor for the lease of decedent's lands, after the court had made an order authorizing the executor to execute the lease to him and his associates, withdrew his application without the knowledge of his associates, and the court, on a stipulation entered into between B. and the executor, made an order permitting the withdrawal of the offer to lease and the security filed for the performance of the terms thereof. *Held*, that a subsequent order, directing the executor to execute a lease to B's. associates, while the order withdrawing the proposal was unrevoked, and no new petition was filed, was unauthorized and void.

6. Under Code of Civil Procedure, Sections 2720, 2722, upon an application for leave to execute a lease to K., the district court cannot grant a lease to other parties who are not before it.

7. Under Code of Civil Procedure, Sections 2720, 2722, the district court cannot, of its own motion, without any application, or notice, or hearing, grant a lease to any person making it known that a lease is desired.

8. The power of the district court, when sitting in probate matters, is limited by the provisions of the statute from whence such power is derived.

9. Code Civil Procedure, Section 2720, provides that the court or judge may authorize an executor to lease his decedent's lands on it being made to appear by a verified petition filed that it is for the best interests of the estate so to do; and Section 2722, Subdivision 6, provides that no omission, error, or irregularity in the proceedings to secure an order, authorizing an executor to lease his decedent's lands shall invalidate the same, or the lease made in pursuance thereof. *Held*, that the latter provision does not dispense with the necessity of a verified petition by some authorized person, and notice to all parties interested, and an order made without such formalities is void.

APPLICATION in the name of the State of Montana, on the relation of Daniel Shields and another, as executors of the estate of James Tuohy, for a writ of *certiorari* to annul an order made by the district court of the Second judicial district. Order annulled.

## STATEMENT OF THE CASE.

Application for writ of *certiorari* to annul an order made by the district court of the Second judicial district directing Cyril Pauwelyn, as executor of the last will and testament of James Tuohy, deceased, to execute a lease to D. J. Ryan and C. J. McSherry of certain mining property belonging to the testator's estate.

From the affidavit and the record certified up from the district court the following facts appear:   Cyril Pauwelyn, one of the applicants for the writ, is the duly-appointed executor of the last will of James Tuohy, deceased, and is acting as such under the jurisdiction of the said court and the Honorable Judge Lindsay, one of the judges thereof.   On February 28, 1899, the executor filed his verified petition in said court, asking that an order be made permitting him to lease the property to John Britt, C. J. McSherry, and D. J. Ryan for the term of two years; and also to authorize him to grant the lessees an option to purchase the property for the sum of $60,000 at any time during the term of the lease.   The petition sets forth all the matters required by law to be contained herein, including the terms and conditions of the lease.   The rental is stated as agreed upon at "20 per cent. of the net smelter returns of all ores extracted and taken from the said premises," the lessees to render monthly account thereof. On March 22, 1899, after due publication of notice, a hearing was had.   Thereupon an order was made and entered authorizing the lease as prayed for, but denying the request for permission to the executor to grant the lessees an option to purchase.   The formal order was entered on March 25th.   It set forth specifically the terms and conditions of the lease, and fixed the rental to be paid at the rate stated in the petition as agreed upon between the parties, leaving no option to the executor to accept any greater rate if he could obtain it.   On March 30th the executor filed another petition, reciting the proceedings under his former petition, and the order made in pursuance thereof.   It then proceeded to show that subsequent to the date of this order the executor had received an offer from other parties, who proposed to take a lease upon the same terms as Britt, McSherry, and Ryan had offered to do, with the additional stipulations that they would pay the executor $500 in cash as a bonus; that they would pay as rental 25 per cent. of the net smelter returns from ores extracted; and that they would give security for the performance of certain development work—involving an expenditure of $3,000—required

by the lease authorized by the original order.   The court was
asked to revoke the former order, and, as the lease authorized
therein had not been executed, to permit the executor to ac-
cept the offer set forth in the second petition.   This petition
was heard, after notice to Britt, McSherry, and Ryan, and
on April 17th an order was made in which the court refused
to revoke the former order "at present."   The executor was
directed to ascertain from Britt, McSherry, and Ryan if they
would meet the more favorable terms set forth in the peti-
tion, and to report their wishes to the court.   The order also
stated that, if they would meet these terms, the lease would
be ordered made to them.   At this point the record is some-
what obscure, but it is admitted that the facts are that it was
reported to the court that Britt, McSherry, and Ryan would
accept the more favorable terms mentioned by the executor
in the petition of March 30th, and were willing that the orig-
inal order of March 25th be modified accordingly.   On
April 19th another order was made and entered, which,
after    reciting    all    the    former    proceedings,    modified
the    order    of    March    25th,    and    directed    the
lease    to    be    executed    in    conformity    with    the    new
arrangement.   This order fixed the rental at 25 per cent. of
the net smelter returns from the ores extracted from the
property, leaving the executor no option to accept any other
offer.   On April 29th the court ordered a citation to issue to
the executor directing him to appear before the court on May
6th to show cause why the lease had not been executed to
Britt, McSherry, and Ryan, as theretofore directed.   At the
date fixed in the citation the executor appeared, and filed an
answer to the citation, giving as a reason for his failure to
act under the order of April 19th that neither Britt, nor Mc-
Sherry, nor Ryan, nor any one for them, had tendered to him
the sum of $500 bonus; that no one for them had tendered
any bond to guaranty the expenditure of the $3,000 in devel-
opment work, as required by the order of April 19th; that on
the evening of April 19th, after the order was made, he re-
ceived an offer of a bonus of $1,000 for the lease with the

same terms as those provided for in the order of that day; and that he deemed it his duty to accept this last offer. Before the hearing under the citation, Britt, McSherry, and Ryan complied with the order of April 19th, by depositing in the hands of the clerk of the court the sum of $500, and a bond in the sum of $6,000 to guaranty the expenditure of the $3,000 in development work. In the meantime, and on April 24th, the executor had filed a petition, again reciting the history of the proceedings, showing to the court the facts touching this last offer, and asking that he be permitted to execute a lease upon the property involved to the parties making the last offer at a minimum rental to be fixed by the court. This petition the court refused to entertain. On April 26th, Daniel Shields, the other relator herein, filed his petition as a creditor of the estate, alleging the same facts as those stated in the petition of the executor, and asking for the same relief as that demanded in the executor's last petition. This was set for hearing at the time fixed for the hearing under the citation. A hearing was had, and on May 8th the executor was directed to execute the lease to Britt, McSherry, and Ryan, notwithstanding the matters set forth in the answer to the citation. The questions presented by the petition of Shields were taken under advisement. On May 13th the court entered an order denying the petition of Shields.

On May 16, 1899, a stipulation was filed in the proceeding by the attorneys for the executor and Britt, by the terms of which Britt was permitted to withdraw from the hands of the clerk the bonus of $500, and the bond to guaranty the development work, and all proposals theretofore made for a lease in behalf of himself, McSherry, and Ryan. On May 20th an order was made by the court permitting this stipulation to be carried out, and it was done. Thereafter, on May 29th, the executor filed another petition reciting all the former proceedings in connection with the lease and the withdrawal by Britt of the deposit of the money and bond in acceptance thereof under the orders of April 19th and May 8th, and asking permission of the court to lease the property to one Silas

F. King upon the terms offered on April 19th, and set forth in the petition presented by the executor on April 24th and in that of Shields on April 26th.   To this petition objection was made by McSherry and Ryan, they averring that Britt was not authorized by them to withdraw the bond and bonus deposited by him for himself and them in acceptance of the lease ordered made to him and them under the order of April 19th, and affirmed by the order of May 8th; that his action in withdrawing these by stipulation was a fraud upon themselves, and prejudicial to their rights; that, as soon as they ascertained what had been done, and on May —, 1899, they had deposited with the clerk $500, and a good and sufficient bond, as required by the order of April 19th; and that they should be permitted to have the lease notwithstanding the unauthorized action of their associate Britt.   On June 10th, after a hearing upon this last petition and the objections thereto by McSherry and Ryan, and without any other or further notice than that given upon the filing of the petition of the executor on February 28th, the court entered an order denying the petition of the executor and sustaining the contention and claim of McSherry and Ryan.   This order directed the executor to execute the lease to McSherry and Ryan under the order of April 19th, leaving the order of May 20th in full force and effect, unchanged and unmodified.   It further appears from the record that Britt, so far as he was connected with the proceedings herein, was acting in his own behalf and as the spokesman for McSherry and Ryan.   It is not disclosed whether any proof was heard by the court under the petition of May 29th and the objections thereto by McSherry and Ryan.

*Mr. F. E. Corbett, Mr. H. Lowndes Maury,* and *Mr. J. W. Cotter,* for Relators.

*Mr. De Gay Stivers,* and *Mr. William I. Lippincott,* for Respondents.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

The contentions made by counsel require an answer to two questions:

(1)  Was the order of April 19th in excess of the jurisdiction of the district court for the reason that it named a fixed rental to be paid by Britt, McSherry and Ryan?

(2)  Was the order of June 10th void by reason of the stipulation filed in the proceeding on May 16th, and the order made in pursuance thereof on May 20th, authorizing Britt to withdraw the acceptance of the lease by him for himself and associates with all proposals for a lease?

1.   The power of the district court to authorize an administrator or executor to lease the real estate, or any part of it, in his hands for the purpose of administration, is derived from the Code of Civil Procedure, Secs. 2720, 2722.   Section 2720 provides:

"Whenever it appears to the court or judge, to be for the advantage of the estate to raise money by mortgage of the real property of the decedent, or any part thereof, or to make a lease of said realty, or any part thereof, the court or judge, as often as occasion therefor shall arise in the administration of any estate, may, on a petition, notice and hearing as provided for in this article, authorize, empower and direct the executor or administrator to mortgage or lease such real estate or any part thereof."

The mode of procedure is provided in section 2722.   The portions of it requiring notice here are the following:

"To obtain an order to lease the realty, the proceedings to be taken and the effect thereof shall be as follows:

"(1)  The executor, administrator, or any person interested in the estate, may file a verified petition showing: the advantage or advantages that may accrue to the estate from giving a lease; a general description of the property proposed to be leased; the term, rental and general conditions of the proposed lease; and the names of the legatees and devisees, if any, and of the heirs of the deceased, so far as known to the petitioner.   *   *   *

"(4)  At the time and place appointed in the order to show

cause, or at such other time and place to which the hearing may be postponed, the court or judge having first received satisfactory proof of personal service or publication of the order to show cause, must proceed to hear the petition and any objections that may be filed or presented thereto. Upon such hearing witnesses may be compelled to attend and testify in the same manner and with like effect as in other cases, and the court or judge may, in its or his discretion, appoint one or more, not exceeding three, disinterested persons to appraise the rental value of the premises, and direct that a reasonable compensation for their services, not to exceed five dollars per day, to be paid by the estate. If, after a full hearing, the court or judge is satisfied that it will be for the advantage of the estate to lease the whole or any portion of the real estate, an order must be made authorizing, empowering and directing the executor or administrator to make such lease. The order may prescribe the minimum rental to be received for the premises, and the period of the lease, which must in no case be longer than for five years, and may prescribe the other terms and conditions of such lease.

"(5) After the making of the order to lease, the executor or administrator must execute, acknowledge and deliver a lease of the premises, for the rent, and period, and with the conditions specified in the order, setting forth in the lease that it is made by authority of the order, and giving the date of such order. A certified copy of the order shall be recorded in the office of the county clerk of every county in which the leased land or any portion thereof lies.

"(6) Every lease so made shall be effectual to demise and let, at the rent, for the term, and upon the conditions prescribed therein, the premises described therein. Jurisdiction of the court to administer the decedent's estate shall be effectual to vest such court and judge with jurisdiction to make the order for the lease, and such jurisdiction shall conclusively inure to the benefit of the lessee, his heirs and assigns. No omission, error or irregularity in the proceedings impairs or invalidates the same, or the lease made in pursuance thereof."

Subdivisions 2 and 3 contain provisions touching the form and contents of the notice to be given, and the time and mode of service.   It is not necessary to examine these matters further than to note the requirement that the notice must contain mention of the term and rental contemplated by the proposed lease.   There is no question here but that there was proper notice of the original application.   The contention is made by counsel for the relators that the order of April 19th was in excess of jurisdiction, for the reason that the court or judge could not, under the foregoing provisions of the statute, fix at a specific sum or rate the rental to be paid by the lessees. The provision contained in the last sentence of subdivision 4, they say, requires a minimum to be fixed, so that it may be left to the discretion of the executor or administrator to secure a greater sum or rate, if he can.   It therefore follows, also, they insist, that the court or judge should not, in the order, name the lessee or lessees, but the representative of the estate should be left unrestricted in the exercise of his discretion, except as to the length of the term, the minimum rental, and the other terms and conditions of the lease; so that he may be free to accept or reject offers from persons who may not be known as desiring a lease at the time the order is made.   In short, their contention is that the power of the court or judge is exhausted when the order is made permitting a lease at a minimum rental upon suitable conditions. The executor or administrator will then be free to carry out the order when, in his discretion, a suitable offer has been made.   If this order was without jurisdiction, the conclusion must be that the order of June 10th was void, since it was founded upon the former order, without reference to the conditions existing on June 10th.   It is clear that this contention cannot be sustained.   The provisions of subdivision 1, *supra,* clearly contemplate a case where the executor or administrator has already exercised his discretion, and made all the arrangements and agreements with some particular person or persons for a lease, subject to the order of the court or judge, and presents his petition asking for authority to carry out the

arrangement.    For if, after a hearing upon proper notice, as
provided in subdivision 4, this officer's acts are approved, and
it is found to the advantage of the estate to make the lease,
"an order must be made authorizing and directing the execu-
tor or administrator to make such lease;" that is, the lease
asked for in the petition, and mentioned in the notice as con-
taining a fixed rental, a specified term, and certain conditions.
After the order is made, "the executor or administrator must
execute, acknowledge and deliver a lease of the premises for
the rent and period and with the conditions specified in the
order." The lease shall also give the date of the order, and
state that it is made under the authority thereof. (Subdivis-
ion 5.) Furthermore, "every lease so made shall be effectual
to demise and let," etc., and the jurisdiction of the court or
judge to make the order "shall conclusively inure to the bene-
fit of the lessee, his heirs and assigns." (Subdivision 6.) All
these provisions taken together seem clearly to have in view
the idea that at the end of the proceedings, and after the order
is made, there is nothing left for the representative of the
estate to do but carry out the order according to its terms.
This duty is obligatory upon him.    No discretion is left.    To
all intents and purposes the lease is the act of the court or its
judge, and the executor or administrator becomes but the
agent, without discretion, to execute it.    For it cannot be ad-
mitted that it is not the duty of the court or judge to inquire
into the responsibility, both moral and financial, of the lessee,
and the prospect that the promised rent will be paid, and the
other conditions of the lease carried out.    Contrary to the
contention of counsel, the provision contained in the last sen-
tence of subdivision 4 is in full accord with these ideas.
Clearly, this has reference to a case where the court or judge
disapproves, or does not entirely approve, of what the repre-
sentative has proposed, or where it is deemed advisable to in-
sert other conditions and agreements in the contract, the bet-
ter to guard the interests of the estate and to meet contingen-
cies likely to arise during the term.    It may be advisable to
require security for the faithful performance of the conditions

of the lease, and the lease may be conditioned upon the furnishing of this.    There may be circumstances indicating that rents will fluctuate during the term.    It might be desirable to direct the lease to be conditioned to meet this contingency. In the exercise of a sound discretion this could be done.    By fixing a rental for the time being with provisions for the payment of a greater or less amount upon the happening of certain contingencies, but never a less amount than a specified minimum, the estate would be assured a revenue at no time less than that produced by the minimum rate, and would profit by an increase in values.    This provision seems peculiarly applicable to the conditions arising in a state like ours, in which property interests often depend upon mining enterprises, and rents and values are subject to frequent and violent fluctuations.    Especially applicable is it to a case like the present, where the only property belonging to the estate consists of mines, which, from their situation and surroundings, are probably of great value, and it is desirable to save them to the estate, and at the same time meet the demand of its creditors.    All the provisions of subdivision 4, *supra*, clearly have to do with the powers and duties of the court or judge, and have no reference to those appertaining to the executor or administrator.    The addition of the last provision to this subdivision can only be regarded as a more specific definition of the discretionary powers vested in the court or judge.

We do not think the statute as a whole contemplates leaving any of the substantial conditions or agreements in the lease to the final discretion of the representative.    Certainly, the provisions of subdivision 4 do not.  The minimum rental which a court might fix in a particular case would depend upon conditions enumerated in the lease, and the determination of them would be entirely without the discretion of the representative.

In making the order of March 25th the district court was clearly within its lawful powers.    So it was within its discretion to make the order of April 19th, modifying its former order, the lessees and executor having agreed to the modification.    It was also its duty to refuse to revoke this order with-

out the consent of the lessees after they had accepted its terms and complied with them on their part. After this had been done, the court had no authority to revoke it upon the facts disclosed in the record upon the filing of the petition of April 24th.

2.   The order made on June 10th directing the executor to execute the lease to McSherry and Ryan was without jurisdiction and void. Throughout the proceedings looking to the making of the lease Britt was the representative of himself and his associates. He accepted the terms of the original order, and also of the order of April 19th, and complied with the terms of the latter by paying down the $500. bonus, and furnishing the required bond. Thereupon, and before the' order had been carried out, moved by considerations not disclosed by the record, he stipulated with the executor for a release from the agreement, and the court confirmed that stipulation. He then withdrew the money and bond from the hands of the clerk, and also all proposals theretofore made to the executor for a lease. This left the matter in the same position as it was before the original application was made by the executor. If the release was proper, there was at the date of the order nothing before the court but the application for permission to lease to Silas F. King. If the release was not proper, still the executor was not in a position to carry out the order of April 19th as long as the order of May 20th remained unchanged. As the latter stood, it virtually revoked the former order, and the court, in making the order of June 10th under this condition of the record, did so in the absence of any application before it upon which this latter order was based. For it cannot be claimed that upon an application for leave to execute a lease to Silas F. King the court would grant a lease to other parties who were not before it. McSherry and Ryan were not there asking for a lease, but were objecting to the application on behalf of King. They had no one petitioning for them. They were not interested in the estate, and could not make any application on its behalf. If they had been defrauded of their rights by their associate, they should

have applied to the court to have the order of May 20th set aside. In this way only could they be heard, if they could be heard at all. If the court could grant them a lease under these circumstances, then it could, of its own motion, without any application or notice, or hearing, grant a lease to any person making it known that a lease was desired. This the court could not do. Its power when sitting in probate matters is derived from the statute, and it cannot go beyond the provisions of the statute. (*State ex rel. Bartlett* v. *Second Judicial District Court*, 18 Mont. 481, 46 Pac. 259; *In re Higgins' Estate*, 15 Mont. 474, 39 Pac. 506, 28 L. R. A. 116.) Jurisdiction over the estate, and the power arising therefrom to make the order for a lease, inure to the benefit of the lessee only when they have been invoked by proper application. The error, omission or irregularity referred to in the latter part of subdivision 6 of the statute, upon which counsel relies for a justification of the order of June 10th, certainly does not warrant dispensing with a verified petition by some authorized person, and notice to all parties interested.

The order of the district court made and entered on June 10th must be annulled. It is so ordered.