*Reversed and remanded.*

---

## IN RE SCHEUER'S ESTATE.

### SCHEUER, APPELLANT, *v.* KINMAN, RESPONDENT.

(No. 2,010.)

(Submitted November 16, 1904. Decided January 23, 1905.)

*Guardianship—Incompetent Persons—When Relation Terminates — Restoration to Capacity—Effect—Termination of Guardianship—Probate Court—Jurisdiction.*

Guardian's Account—Settlement—Appeal.

  · 1.  An order confirming a guardian's account, being appealable under Session Laws of 1899, page 146, and no appeal having been taken therefrom, questions respecting its settlement cannot be considered on a subsequent appeal from an order of sale of the ward's real estate.

Probate Courts—Jurisdiction—Real Property—Sale—Guardians—Insane Ward—Restoration to Capacity.

  2.  The district court, sitting as a court of probate, has no jurisdiction to entertain or grant an order for the sale of real property belonging to one who has been under guardianship because of mental incapacity, after such person has been judicially restored to capacity.

Probate Courts—Jurisdiction—Limited.

  3.  District courts, sitting as courts of probate, are courts of special, and limited jurisdiction, possessing no powers other than those expressly or by necessary implication conferred by statute.

Guardians—Authority Over Estate of Ward—Statutory Construction.

  4.  The authority of a guardian of an incompetent over the person or estate of the ward is not extended by Code of Civil Procedure, Section 2972, to the time when he is "legally discharged" by an order of court, but such guardianship is, under Section 2973 of the same Code, terminated, *ipso facto*, by the judicial determination that the ward is of sound mind, and the adjudication of his restoration to capacity.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

JUDICIAL proceedings in the estate and guardianship of Frederick V. Scheuer, a mental incompetent. From an order for a sale of so much of his real estate as had been in the possession of his guardian, Charles E. Kinman, from his appointment until an order of restoration of capacity, Scheuer appeals. Reversed.

*Messrs. Sanders & Sanders,* and *Messrs. Hinkle & Wallace,* for Respondent.

The possession of the ward does not carry with it, as a legal consequence, the abandonment by or the supercession of the control and jurisdiction of the court over the realty for the purposes of settlement of the guardianship and the sale of the real estate, now or at any time since the order of restoration, and in contemplation of law the guardian remains in possession until he is legally discharged. (*In the Estate of Henning,* 128 Cal. 214; *Graeyer* v. *Superior Court,* 117 Cal. 640; *In the Estate of Clary,* 112 Cal. 292; Woerner on American Law of Guardianship, p. 428.)

The order restoring the ward to mental capacity is not such an order as, in its legal effect, discharges the guardian éven as a guardian over his ward's person. (*Marlow* v. *Lacy,* 68 Tex. 154; *Probate Court* v. *Child,* 51 Vt. 82; *State ex rel. Kelly* v. *Probate Court,* 85 N. W. 917.) An order restoring a ward to mental capacity cannot terminate the guardianship over the ward's estate under the plain provisions of our law. A guardian in a general sense is a trustee. (1 Perry, Trusts, Sec. 1; 1 Pomeroy, Eq. Jur. Sec. 57; 2 Pomeroy, Eq. Jur. Secs. 1088, 1097; Field, Inf. Sec. 132; Overt., Liens, Sec. 584; *Curran* v. *Abbott,* 40 N. E. 1091, 3; *Point* v. *Frank,* 64 S. W. 637.) And it is well settled law that a trustee has an equitable right to be reimbursed for all reasonable expenses properly incurred in the execution of his trust, and that the expenses of a trustee in the execution of his trust are a lien upon the estate, and he will not be compelled to part with the property until the disbursements are paid. (2 Perry, Trusts, Secs. 4485, 907, 910; 2 Pomeroy, Eq. Jur. Sec. 1085; 2 Jones, Liens, Secs. 1175, 1177; Overt., Liens, Secs. 587, 589.)

The district court possesses the powers of a court of equity in the settlement of guardians' accounts. Jurisdiction remains in the probate court, after a minor's majority, over the estate in the hands of the guardian for the purposes of an accounting of the guardian as to transactions during the minority of the ward. (*Estate of Curtis,* 121 Cal. 468, 474.) The jurisdiction over guardians and their accounts is strictly equitable; the proceedings, in whatever court carried on, are equitable in their nature, and governed by the rules of equity. In California the superior court, even when sitting in probate, possesses all the powers of a court of equity which are necessary or incidental to the matter before it, and is guided and controlled in matters of guardianship and the like by the rules of equity. (*Estate of Kincaid,* 120 Cal. 211, opinion by Van Vleet, J., dissenting; *In re Moore,* 96 Cal. 522, 528; *In Estate of Clos,* 110 Cal. 494, 501-502; *In re Clary,* 112 Cal. 292; *In re Beisel,* 110 Cal. 267; *Pyatt* v. *Pyatt,* 46 N. J. Eq. 285, quoted in *Estate of Curtis,* 121 Cal. 268; *Cutting* v. *Scherzinger,* 68 Pac. (Ore.) 395.)

The account and report, upon a reference, were, without objection by Scheuer, adopted and approved, and no appeal has ever been taken therefrom. (*Jarret* v. *Andrews,* 70 Ky. 311; *Cook* v. *Rainey,* 61 Ga. 452; *Cohen* v. *Shyer,* 1 Tenn. Ch. 192; *Roseborough* v. *Roseborough,* 62 Tenn. 314.)

*Mr. M. E. LeBlanc,* and *Mr. George F. Shelton,* for Appellant.

When the court made and entered its order restoring Scheuer to capacity and adjudging him competent to manage his own affairs, the guardianship ceased; the power of the guardian over the person or property of Scheuer was terminated, *ipso facto,* and the court was without jurisdiction to order Kinman to sell the property of Scheuer. (*Davidson* v. *Wampler,* (Mont.) 74 Pac. 82; *State ex rel. Donovan* v. *District Court,* 27 Mont. 415, 71 Pac. 401; *In re Livermore's Estate,* 64 Pac. 113; *Curtis* v. *Devoe,* 121 Cal. 468, 53 Pac. 936, 939; *In re Allgier,* 65 Cal. 229; *Alford* v. *Halbert,* 74 Tex. 346, 12 S. W. 75; *In re Kincaid's Estate,* 120 Cal. 203, 52 Pac. 492.)

Acts done by a guardian after the majority of his ward are not valid, and the probate court has no jurisdiction over the same. (*Curtis* v. *Devoe,* 121 Cal. 468, 53 Pac. 936; *In re Latham,* 41 N. C. 406; *Probate Judge* v. *Stevenson,* 55 Mich. 320; *Lyster's Appeal,* 54 Mich. 325; *Hudson* v. *Bishop,* 32 Fed. 519; *Berkin* v. *Marsh,* 18 Mont. 152; Woerner on Guardianship, Sec. 710; *Wyatt* v. *Woods,* 31 Mo. 351, 353; *Frost* v. *Winston,* 32 Mo. 489; *Matter of Richards,* 6 Serg. & R. 462; *Brown* v. *Chadwick,* 79 Mo. 587.) Guardianship is terminated on judicial ascertainment of restoration, and the court has no further jurisdiction over the guardian than to compel accounting. (Woerner on Guardianship, Sec. 150, p. 501.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On October 21, 1901, an order was duly made in the district court of Silver Bow county, Montana, adjudging Frederick V.

Scheuer mentally incompetent to manage his own affairs, and appointing Charles E. Kinman guardian of the person and estate of such incompetent. Thereafter, on March 19, 1903, upon the petition of the next friend of Scheuer, a hearing was had before the court, and Scheuer was thereupon adjudged restored to mental capacity. On April 7, 1903, Kinman, as guardian, returned into court his report, designated "Third Annual Report" of such guardianship, to which report certain objections were made by Scheuer. A reference of the report and objections was made, a report from the referee had, and on August 3, 1903, an order was made by the court confirming the report of the guardian as amended by the recommendations of the referee. This report, as amended, showed a balance due to the guardian from the ward's estate of $2,043.97. On August 18, 1903, Kinman, still pretending to act as guardian, presented to the court a petition for the sale of certain of the real estate belonging to Scheuer, for the purpose of raising money to discharge the amount so found due. An order to show cause was issued and served. Thereupon Scheuer filed a motion to dismiss such petition on the ground of a want of jurisdiction in the court to entertain it. This motion was overruled, and Scheuer then filed his objections to the petition, specifying particularly the fact that the court was without jurisdiction to entertain the petition, and urging as a reason for such objection the fact that Scheuer had several months prior thereto been adjudged restored to mental capacity. In the petition for the order to sell, the guardian sets forth the fact of the restoration of Scheuer to capacity, and that from that date subsequently Scheuer had been in possession and control of the property sought to be sold. The objection of Scheuer to the granting of the petition was overruled, and on September 15, 1903, the court made an order for the sale of so much of the real estate belonging to Scheuer, and which had been in the possession of the guardian from the date of his appointment until the date of the order of restoration, as might be necessary to raise the

amount due the guardian.    From this order of sale, Scheuer appealed.

Certain questions respecting the settlement of the guardian's account are sought to be presented here, but as the order confirming such report was an appealable order (Sess. Laws 1899, p. 146), and there was not any appeal taken therefrom, we cannot on this appeal consider the same.

But one question is presented for settlement, namely, has the district court, sitting as a court of probate, any jurisdiction to entertain a petition for the sale of real property belonging to one who has been under guardianship because of his mental incapacity, presented after an order has been made judicially determining and adjudging such person restored to capacity, and to be of sound mind and capable of taking care of himself and of his property, or to grant an order of sale based upon such petition?    A solution of this question rests upon the construction of certain sections of the Code of Civil Procedure, which, at first blush, appear to be in hopeless conflict.

Section 2972 provides that every guardian of an incompetent person shall have the care and custody of the person of his ward, and the management of all his estate, until such guardian is legally discharged.

Section 2973 provides for an inquiry to have the fact of the ward's restoration to capacity judicially determined, and provides that if, upon such inquiry, it be found that the person is of sound mind and capable of taking care of himself and his property, his restoration to capacity shall be adjudged, "and the guardian" of such person shall cease.    It is evident that the term "guardianship" was intended to be used instead of the term "guardian."

The language of Section 2973, above, is susceptible of but one construction, namely, that the judicial determination that the ward is of sound mind, and capable of taking care of himself and his property, and the adjudication of his restoration, do, *ipso facto,* terminate the guardianship.    (Woerner's American Law of Guardianship, Sec. 150; *Probate Judge* v. *Steven-*

*son,* 55 Mich. 320, 21 N. W. 348; *In re Latham,* 6 Ired. Eq.
(N. C.) 406.)   Section 2972 also provides that the bond of a
guardian of an incompetent person shall contain like conditions
as prescribed for the bond of a guardian of a minor.

Section 2957, among other things, provides that the bond of
a guardian of a minor shall be conditioned "that the guardian
will faithfully execute the duties of his trust according to
law, and the following conditions shall form a part of such
bond without being expressed therein:   *   *   *   (3) To render
an account on oath of the property, estate and moneys of the
ward in his hands and all the proceeds or interests derived
therefrom, and of the management and disposition of the same,
within three months after his appointment, and at such other
times as the court or judge directs, and *at the expiration of his
trust* to settle his accounts with the court or judge, or with the
ward, if he be at full·age, or his legal representatives, and to
pay over and deliver all the estate, moneys and effects remain-
ing in his hands, or due from him on such settlement, to the
person who is lawfully entitled thereto.   *   *   *"   If the order
of restoration terminates the guardianship, then the expression
"the expiration of his trust," as used in this section, and the
order for the restoration of the ward to capacity, as provided
for in Section 2973, must of necessity refer to the same event
in point of time; and, if this be so, then the duty of the guar-
dian of an incompetent person upon the termination of his
guardianship is plain.   He shall settle his accounts with the
court or judge, or with the ward, and pay over and deliver all
the estate, moneys and effects remaining in his hands, or due
from him on such settlement, to the person lawfully entitled
thereto.   (Section 2957, *supra; Shepherd* v. *Newkirk,* 21 N. J.
Law, 302.)

The powers, duties and liabilities of a guardian of a person
of unsound mind are the same, and subject to the same restric-
tions, as those of a guardian of a minor.   (Section 2957, above;
Woerner's American Law of Guardianship, Sec. 137.)

In *In re Allgier,* 65 Cal. 228, 3 Pac. 849, it is said:   "When

a ward attains the age of majority, the office of guardian comes to an end, and it is *then* the duty of the guardian, and one of the obligations of his bond, to exhibit a final account of his guardianship to the probate court, make a settlement with the probate judge or with the ward, and deliver all the property in his hands belonging to the ward. (Section 1754, Code of Civil Procedure.) Failure to do this constitutes a breach of his bond, for which he and his sureties are liable after settlement of the guardianship."

But it is contended that under the provisions of Section 2972, above, the management of the ward's estate is imposed upon the guardian until he is legally discharged, and that the phrase "legally discharged" means discharged by an order of the court. If this contention be sustained, then the last sentence of Section 2973 is meaningless, for the court might not make an order discharging the guardian for a year or more after making the order restoring the ward to capacity. Indeed, this very case presents an instance where the ward was adjudged restored to mental capacity in March, and yet as late as September following no order for the discharge of the guardian had been made. If the contention of the respondent could be maintained, then the guardianship continues, and a person *sui juris,* against his own will, is subject to the control and government of a guardian, which in itself involves a contradiction of terms and a legal impossibility.

Respecting the term of office of a guardian of a minor, Section 2956 provides: "Every guardian appointed shall have the custody and care of the education of the minor, and the care and management of his estate, until such minor arrives at the age of majority or marries, or until the guardian is legally discharged."

Section 1753 of the California Code of Civil Procedure is identical with our Section 2956, above, and, construing that section, the supreme court of that state, in *Curtis* v. *Devoe,* 121 Cal. 468, 53 Pac. 936, said: "We do not think that the clause, 'or until the guardian is legally discharged,' was intended to

prolong his control of the person and estate of the minor, for, if it did, he would have control for one year after the majority of the ward (Civil Code, Sec. 257), and this would be in conflict with the provisions of the Code of Civil Procedure, *supra*. Upon the minor's attaining majority, the guardian must then make a settlement either with the court or ward, and pay over and deliver to the ward all the estate in his hands, 'or due from him on such settlement.' "

A canon of statutory construction which requires that meaning shall be given to every section of a particular statute, if possible, requires us to hold that the term of the guardian's office is limited by Section 2973, Code of Civil Procedure, and that immediately thereafter the guardian shall make his final report and be discharged, and that, after the termination of his office by the restoration of the ward, the only power or authority possessed by the guardian is to make such report, and turn over to the proper person all property with which he is chargeable on such report. (*Curtis* v. *Devoe,* above.) This is what he and his bondsmen agree he will do, and it is clear that the law never contemplated that he might continue to exercise acts of authority and control over the property of one who had been judicially determined to be *sui juris*. Likewise, the authority of the probate court, after the order of restoration is made, is limited to requiring the guardian to make such final report, and to discharge such guardian from his trust. The legal effect of the order of sale made in this instance is that of an execution to enforce the payment of an indebtedness found to be due by the ward to his guardian upon the termination of the guardianship, and this power or authority is not possessed by a district court sitting as a court of probate. The principle would be the same if, upon the final report of the guardian, it was found that the guardian had in his possession property belonging to the ward which he was directed to turn over to the ward, but which he failed to do. We know of no process which a probate court can issue to enforce such order. The remedy is an action against the guardian, or on his official bond. (*Stumph* v. *Guardianship of Pfeiffer,* 58 Ind. 472.)

This court has repeatedly held that the district courts, sitting as courts of probate, are courts of special and limited jurisdiction, possessing no powers other than those expressly or by necessary implication conferred by statute. (*In re Higgins' Estate*, 15 Mont. 474, 39 Pac. 506, 28 L. R. A. 116; *State* v. *District Court*, 18 Mont. 481, 46 Pac. 259; *State* v. *District Court*, 24 Mont. 1, 60 Pac. 489; *Davidson* v. *Wampler*, 29 Mont. 61, 74 Pac. 82.)   And such courts, in the absence of statutory authorization, have not the power to carry into effect their judgments, decrees or orders made on the final accounting of guardians, though they may possess exclusive power to compel such accounting.   (Woerner's American Law of Guardianship, Sec. 110.)   Likewise there is no difference, in principle, no matter what event may operate to terminate the guardianship, for, if the guardianship is actually terminated, it is quite immaterial whether it was by the restoration of the ward to capacity, or the death of the ward.   The termination of the guardianship imposes the legal duty upon the guardian to make final settlement immediately after such termination, and to limit the authority of the court to requiring such settlement to be made.

A case directly analogous to the one at bar is found in *In re Livermore's Estate*, 132 Cal. 99, 64 Pac. 113, 84 Am. St. Rep. 37, where, after the ward died, the guardian secured an order for the sale of a portion of the ward's property to pay an indebtedness found due to the guardian upon final account.   Respecting this order the Supreme Court of California said: "The foregoing proceeding is unique in this state, and the order made by the trial court cannot find support in the law.   The title furnished to a purchaser at the sale by the deed of the guardian would not be worth a dollar.   The proceedings here taken for the sale were taken under the Code provisions pertaining to guardianship matters, and, as to a sale of real estate, those proceedings only contemplate a case where there is a living ward— a living ward not only when the proceedings are inaugurated, but up to and including the moment the deed is made.   When

the guardian executes the deed, he executes it for and in the place and stead of his ward, and, the moment that ward is dead, his power to execute the deed is gone. He has no more power to execute a deed under these circumstances than would an attorney in fact after the death of his principal. It is unnecessary to consider here what a court of equity might do, under the circumstances presented by the facts of this case, in aid of the probate jurisdiction of the superior court, for here the statutory procedure laid down in the Code in guardianship proceedings alone has been followed, and the sale is asked under that procedure. The guardian, as such, is attempting to make the sale, and the court is well assured it cannot be done."

In the early history of Ohio that state had a statute which authorized the court of common pleas to appoint guardians for minors, and further provided that when such minors, males, shall arrive at the age of 14 years, or females shall arrive at the age of 12 years, such minors may severally choose a guardian, such as the court shall approve. This statute was considered in *Lessees of Perry* v. *Brainard,* 11 Ohio, 442. The question in controversy arose as to the authority of the guardian of a female minor to sell real estate belonging to such minor. The petition for the order of sale was presented after the minor had reached the age of 12 years. In disposing of the question, the court said: "It seems to us the obvious construction of this section is, that the appointment of a guardian to a female under 12 years, though unlimited on the face of the appointment, ceases by its legal expiration when the ward arrives at the age of 12 years. At that age the law deems her of sufficient discretion and capacity to have a choice of the person who is to control not only her property but herself, subject, nevertheless, to the approval of the court; and it is then, only, after being notified to appear and make such choice, and refusal on her part, that the court are authorized and required to appoint a guardian if she is over 12 years of age. That the appointment expires by its own limitation when the ward arrives at the age of 12 years, was decided in the case of *Campbell v. English and*

*Wife,* Wright, 119.   The court then held this language:  'A guardian for a female under 12 years of age continues only until the ward attains to that age.   A guardian, or a man that has been a guardian, after his guardianship has expired, has no more power than if he had never been appointed.'   We see no reason to question the soundness of this principle.   It accords with our own views.   How, then, stands the case at bar?   It is admitted the guardian filed his petition for the sale of the land after the ward had arrived at the age of 12 years, and at a time when the law had determined his guardianship.   All the proceedings subsequent to, and including the petition for the sale of the lot, are therefore void, and convey no title to the defendant."

In view, then, of the express declaration of Section 2973 that the restoration of the ward to mental capacity terminates the guardianship, and the further provisions of the law which are read into and made a part of the guardian's bond—that upon the expiration of his trust the guardian will settle his accounts with the court, judge or ward, and deliver over all property with which he is chargeable on such settlement—we are of the opinion that the language of Section 2972 cannot be construed to extend the guardian's authority over the person or estate of the ward beyond the time when such guardianship is terminated as provided in Section 2973.   It would be an intolerable imposition upon a person *sui juris* to compel him to submit to the control of a guardian either of his person or property, and such an imposition was not intended by the law-making authority in enacting Section 2972 above.

Finally, the Codes themselves furnish us a canon of construction.   Section 5165 of the Political Code provides:   "If conflicting provisions are found in different sections of the same chapter or article, the provisions of the section last in numerical order must prevail, unless such construction is inconsistent with the meaning of such chapter or article."   If, then, the seeming conflict between the provisions of Sections 2972 and 2973, above, is not entirely reconcilable, the provisions of Section 2973

must prevail, for there is not anything in the construction which we have given this last-mentioned section which is inconsistent with the meaning of the article in which both sections are found.

The order of sale was void, and is reversed.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.