MITCHELL, Respondent, v. McDONALD, Appellant.

(No. 8356.)

(Submitted January 20, 1943. Decided April 6, 1943.)

[136 Pac. (2d) 536.]

294

*Mr. S. P. Wilson,* for Appellant, submitted an original and a supplemental brief, and argued the cause orally.

*Mr. Edwin T. Irvine,* for Respondent, submitted an original and a reply brief and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant appeals from a judgment quieting title in plaintiff to residence property consisting of a house and two town lots, which were inherited by plaintiff and his father, Harold Mitchell, from plaintiff's mother. Plaintiff, then a minor, had sued by his guardian, C. H. Degenhart, claiming the entire

interest, and defendant had filed her answer and cross-complaint asserting title to an undivided one-half interest in the property as against plaintiff and Mary C. Mitchell, plaintiff's stepmother, and seeking partition by sale of the property and division of the proceeds. Plaintiff's one-half interest inherited from his mother is not in question; the interest in litigation is the other one-half, which was at the same time inherited by his father. Mary C. Mitchell was duly made a party defendant, was served with the cross-complaint, defaulted, and was decreed to have no interest in the property.

It was agreed by counsel at the trial that four deeds constituted all the written evidence of both parties' claims to the undivided one-half interest from their common source; those deeds, all of which the uncontradicted statutory presumption or uncontradicted evidence, or both, show to have been executed and delivered at their respective dates, are as follows:

1. Harold Mitchell (plaintiff's father) to Mary C. Mitchell (plaintiff's stepmother), warranty deed of October 5, 1937, recorded October 7, 1937;

2. Mary C. Mitchell to Harold Mitchell, warranty deed. of October 5, 1937, recorded May 23, 1938;

3. Harold Mitchell to Madilon McDonald (defendant), warranty deed executed and recorded May 23, 1938;

4. Mary C. Mitchell to Merle Mitchell, otherwise known as Robert Joseph Mitchell (plaintiff), of Arcata, California, quitclaim deed without warranties of title, executed and recorded on December 20, 1940.

Some novel and interesting questions are presented by the findings, conclusions and decree in this case. However, our consideration of the merits upon the general facts and law of the case is prevented by an unusual circumstance; for it developed in the course of the plaintiff's case that the plaintiff, who was a minor when the suit was instituted in his name by the guardian and when defendant's cross-complaint and the other pleadings were filed and served, had become of age before the trial. He had for several years resided in California, took

no part in the proceedings, and was not present at the trial. Defendant insisted throughout that the guardian's authority to conduct the action depended upon the ward's minority, and the guardian insisted throughout that the ward's age was immaterial, and that his authority depended only upon the circumstance that his letters of guardianship had not been revoked.

At the outset defendant's counsel objected to the guardian's oral testimony that he was "the duly appointed, qualified and acting guardian" of plaintiff's estate "for the reason it isn't the best evidence and the question of whether he is guardian resolves itself into a question of the age of Robert Joseph Mitchell and in any event the record of his appointment and the proof of age would constitute the best evidence of whether he is such Guardian."

The objection having been sustained, defendant's counsel said: "On behalf of defendants I would waive mention of the file in the matter of the guardianship of Robert Joseph Mitchell if counsel would offer the letters of guardianship as issued coupled with proof of age preceding the preliminary papers and as far as we are concerned we need not encumber the record with such documents. I do not wish to waive my objection or requirement as to proof of age, it being admitted here both by the pleadings and by statements of counsel that the guardianship of Robert Joseph Mitchell is a guardianship arising by virtue and because he was a minor and therefore, I think it is inherently a necessary element of the question of the present existence of this guardianship to establish the age."

The trial judge replied: "All that would be necessary would be the letters of guardianship and some testimony from the Clerk of the Court it is in full force and effect."

The clerk of court was then called as a witness and over defendant's objection testified that the guardian's letters had never been revoked, which defendant had eliminated from issue, as shown above. The objection called the court's attention to the more fundamental element of that authority, being as follows: "To which we object, if the Court please, on the ground

it becomes immaterial inquiry, the question of the existence of the Guardianship in this matter being dependent upon or answered by determination of the age of Robert Joseph Mitchell who was the minor, our contention being as to age the record would [show?] the guardianship terminated ipso facto of its own accord when the minor became an adult. It matters not what the record of the court showed, and it would not continue the guardianship. If and when the minor reached twenty-one the guardianship concluded of its own power.''

Subsequently both the guardian and plaintiff's father testified that the plaintiff had become twenty-one years of age on September 20, 1941, twenty days before trial.

Near the end of the defendant's case the following objection was made on her behalf: ''I want my objections to stand in connection with the claim of the defendants that Degenhart is not now a party to this action in any sense. His guardianship having terminated of its own force and effect ipso facto when the minor became twenty-one years of age.''

The objection having been summarily overruled, it was again made at the close of all the evidence as follows: ''The evidence being concluded I move that plaintiff's case be dismissed for the reason that the guardianship is in fact actually terminated and C. H. Degenhart is not actually a guardian for the reason that Robert Joseph Mitchell * * * is an adult person now at the time of the trial of this action * * *.'' The court then stated that the motion and others which were coupled with it would be taken under advisement. They were never formally ruled upon, but must be considered to have been denied, since the trial court proceeded to adjudicate the rights of the parties.

The objection as made was (1) that upon the ward's majority the guardian's authority was automatically terminated and (2) that the guardian was no longer the party in interest entitled to sue under section 9067, Revised Codes, which provides that with certain exceptions not here material ''every action must be prosecuted in the name of the real party in interest.''

The second part of the objection was not good, for the suit was already being prosecuted in the name of the real party in interest; the plaintiff was "Robert Joseph Mitchell, * * * a minor, by his Guardian, C. H. Degenhart." Our statutes provide:

"A minor may enforce his rights by civil action, or other legal proceedings, in the same manner as a person of full age, except that a guardian must conduct the same." (Sec. 5687, Revised Codes.)

"When an infant or an insane or incompetent person is a party, he must appear either by his general guardian or by a guardian ad litem appointed by the court in which the action is pending, in each case. A guardian ad litem may be appointed in any case, when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to represent the infant, insane, or incompetent person in the action or proceeding, notwithstanding he may have a general guardian and may have appeared by him." (Sec. 9071, Rev. Codes.)

"Every guardian * * * must appear for and represent his ward in all legal suits and proceedings, unless another person be appointed for that purpose." (Sec. 10418, Rev. Codes.)

In other words, as properly disclosed by the title in this action, the ward has always been the party plaintiff. He has merely appeared by his guardian, who was by statute authorized to conduct the proceedings for him and in his name while as a minor he was unable to conduct them for himself.

Referring to section 372 of the California Code of Civil Procedure, which is identical with our section 9071, supra, the Supreme Court of that state said in *Emeric* v. *Alvarado,* 64 Cal. 529, 2 Pac. 418, at 460: "The guardian is to appear for them [the minor wards], and is no more a party to the action than the attorney who appears in an action for one who has attained his majority is a party to the suit in which he enters his appearance."

While the positions of guardian and attorney are not in all respects analogous they are so in the circumstance that neither

is the party but merely represents the true party in interest. Therefore the second part of the objection—that the guardian *is no longer a party in interest*—is not good; but the first part is good—that the guardian *is no longer entitled to represent the real party in interest*—and that the party is therefore no longer represented in the suit, unless the attorney selected by the guardian to perform the guardian's duty to represent the plaintiff, now represents the plaintiff directly on his own account.

The suit being that of the ward, it does not abate upon the guardian's death or the termination of his authority. (28 C. J. 1261, sec. 448.)

While the courts of some states under their particular statutes █ have held that there should be a substitution of parties when the guardianship is terminated, that procedure is not applicable under our statutes, since the guardian has never been a party; it would therefore seem to be the proper course merely to eliminate the former guardian from the case, both nominally and actually.

Section 10407 provides: "Every guardian appointed shall █ have the custody and care of the education of the minor, and the care and management of his estate, until such minor arrives at the age of majority or marries, or until the guardian is legally discharged."

The final phrase of that section does not mean that the guardian's authority continues, in spite of the ward's majority, until his legal discharge. The point was not actually ruled upon in *Berkin* v. *Marsh*, 18 Mont. 152, 44 Pac. 528, 56 Am. St. Rep. 565, in which the question was the termination of a guardianship by the death of the ward, nor in *In re Scheuer's Estate*, 31 Mont. 606, 79 Pac. 244, which related to the estate of a mentally incompetent ward; but in those cases this court referred to the question for analogy and cited with approval from the opinion in *Probate Judge* v. *Stevenson*, 55 Mich. 320, 21 N. W. 348, and *Curtis* v. *Devoe*, 121 Cal. 468, 53 Pac. 936, in which it was held that such phrase was not intended to prolong the guardian's

control of the person or estate of the minor ward beyond the latter's minority.

It has been held also in *Matter of Allgier,* 65 Cal. 228, 3 Pac. 849; *Estate of Clary,* 112 Cal. 292, 44 Pac. 569, and *In re Estate of Kincaid,* 120 Cal. 203, 52 Pac. 492, that the guardian's authority ceases when the ward attains his majority. We agree with the California court that the statute in question does not change the ordinary rule, which is to that effect. (28 C. J. 1096, sec. 110; 25 Am. Jur. 37, sec. 53.)

It might even be questioned whether a statute could constitutionally change the rule; for it would deny to those who had had guardians during their minority, the full control of their own affairs automatically accruing to all others upon attaining their majority, including the control of their own litigation under section 8988, infra. The question would be the reasonableness of such special classification; but it is not presented here, since the statute expresses no intent to make such discrimination. This court in *In re Scheuer's Estate,* supra, made the following statement which would seem as applicable to a minor coming of age as to a mental incompetent judicially found restored to competency: "It would be an intolerable imposition upon a person *sui juris* to compel him to submit to the control of a guardian either of his person or property, and such an imposition was not intended by the law-making authority * * *." Obviously he is entitled, on coming of age, to elect whether and how to proceed with the action, without the interference of his former guardian.

It follows that upon the ward's attaining majority the power of the guardian to administer his affairs or to conduct lawsuits on his behalf automatically ceases. While it is the ward who has always been the party in interest and therefore the party plaintiff, the attorney representing him during his minority is necessarily selected by the guardian and looks to the latter for his authority and also for his compensation (*McKee* v. *Hunt,* 152 Cal. 526, 77 Pac. 1103), the allowance of which, as a necessary expense of the guardianship, must be procured

from the court. (Secs. 10285 and 10463, Rev. Codes; 25 Am. Jur. 63, sec. 97; 28 C. J. 1236, sec. 409.)

While in the conduct of the suit, the attorney actually represents the interests of the ward, his appointment is solely to implement the guardian's authority to represent those interests, and it is not apparent how his authority to conduct the proceedings can continue beyond the authority of the guardian by whom he was appointed, unless after the change his authority is renewed.

The situation is not that of the usual employment of an attorney, which ordinarily continues until the completion of the proceeding for which he is employed, unless otherwise terminated by law or the act of himself or his client. There is no such continuity here, for a definite break occurred when the ward became of age. Up to that time the guardian had the right to conduct the litigation, including the selection of an attorney, without any control by the ward. After that time the former ward had that right, including the selection of his attorney, without any control by the former guardian.

The guardian's only authority to employ an attorney for litigation is to further his own personal duty to conduct the ward's litigation during the minority, and he could not legally have employed an attorney to conduct the litigation any longer. For our statute (sec. 10285) expressly limits the allowance of attorneys' fees to those "for conducting the necessary proceedings [in guardianship] and for conducting necessary actions in courts," which can only mean those *necessary* during the guardianship. Furthermore, except as especially authorized by statute and approved by the court, the guardian has no power to make contracts for his ward. (28 C. J. 1165, sec. 281; 25 Am. Jur. 64, sec. 98.) We find no statute authorizing him to contract for attorney's services to be performed after the ward's majority, and no court order purporting to approve such contract. The attorney's employment by the guardian could only be in furtherance of the latter's statutory authority

to conduct litigation for the ward, which authority has come to an end.

It is significant that while our statute (sec. 8974) expressly ██ continues the attorney's authority after a client's death, it does not purport to continue his authority beyond the termination of the guardian's power by the ward's majority. The constitutional provision that property may not be taken without due process of law means that the owner is entitled to his day in court, and our statute (sec. 8988, Rev. Codes) provides: ''A party to a civil action, who is of full age, may prosecute or defend the same in person or by attorney, at his election, unless he has been judicially declared to be incompetent to manage his affairs.'' That right necessarily includes, of course, the right to elect whether to proceed with a suit theretofore properly started on his behalf, and if so, the right to select the attorney by whom he is to be represented. Certainly the guardian had neither the intention nor the power to deprive him of that right automatically accruing upon his majority.

Section 8994, Revised Codes, provides: ''The court or judge, on motion of either party, may require the attorney of the adverse party to produce and prove the authority under which he appears, and may stay all proceedings until such is shown, * * *.''

If such demand had been made at the trial in this case, certainly the attorney for the plaintiff could not, by producing authorization from the guardian, have proved his continuing authority to conduct the litigation after the termination of the guardian's right to conduct it. It is clear that upon plaintiff's attainment of his majority he was no longer authoritatively represented, either by the guardian, whose authority to represent him had expired, or by the attorney acting solely under employment by the guardian to implement that authority.

From that time the plaintiff was no more represented under the original employment of counsel by the guardian, than if his guardian had died, had resigned, or had been removed. There is no question that upon a change of guardians the new guardian,

or, upon the plaintiff's majority, the plaintiff, becomes entitled to employ his own attorney. There is no doubt, also, that where the attorney appointed by the guardian, or the first guardian, continues to act as such, the presumption will ordinarily obtain that he has been reemployed by the new guardian or by the ward. But obviously that presumption cannot apply where the attorney, by insisting upon the continuing authority of the guardian (or of the first guardian where another has been appointed), necessarily denies the authority of the ward (or of the new guardian). In either case the ward, or the former ward, would still be the party, as before, but he would have no representation in the suit, and the proceedings should be suspended until the defect of representation was remedied.

In *Waring* v. *Crane*, 2 Paige, N. Y., 79, 21 Am. Dec. 70, where the ward came of age during the proceedings, he was held to be entitled to elect whether to proceed, and was found under the facts to have made such election by taking personal control of the matter, so as to become bound by the result. No such facts appear in this case.

In *Shuttlesworth* v. *Hughey*, 6 Rich., S. C., 329, 60 Am. Dec. 130, the court said: "In an action at law, where an infant is the plaintiff, the process is generally sued out in his name, but he cannot prosecute it in person. For that purpose a *prochein ami* or guardian, must be admitted by the Court to prosecute it for him and to protect his rights. * * * If an infant plaintiff, pending the suit, shall attain full age, he is generally permitted to stop the proceedings, whether he is sole or co-plaintiff with others. The action does not abate when he is of age, and he can elect, whether he will proceed or not." After coming of age plaintiff had elected to proceed by appearing, obtaining leave to file, and filing an amended complaint in her own name. No such facts appear in this case.

The right of a person *sui juris* to manage his own affairs, including the right to control his own litigation and select his own attorney, is so well settled that cases are few in which it has been questioned, even in the absence of statutory pro-

visions like section 8988, supra. Here, having come of age, plaintiff was entitled under that section to elect personally whether to prosecute his action, and if so whether to prosecute it in person or by attorney personally designated by him. Knowing that his own authority was thus about to expire, it was clearly the guardian's duty to make to his ward the necessary disclosure and explanation to make the transition effective. That he did so and that the plaintiff himself took over the control, either personally or by attorney, is entirely negatived by the insistence of the guardian and attorney that the guardian, and therefore the attorney under his authority, were still authorized to conduct and were still conducting the litigation under that authority.

It is immaterial whether this precise objection was made by ▆▆▆ defendant. For the court has inherent power to investigate counsel's authority, however the question has been brought to its notice. (5 Am. Jur. 309, sec. 82; 7 C. L. S., page 881, Attorney and Client, sec. 74; *Missoula Belt Line R. Co.* v. *Smith,* 58 Mont. 432, 193 Pac. 529, 531.) In the above case the defendants had filed a motion asking the court to require the plaintiff's attorneys to produce and prove their authority to appear, and to order a stay until such authority should be produced; they also filed a motion asking that the action be dismissed, on the ground that it had not been properly brought, in that it had not been authorized by anyone having the right to do so. Each motion recited that the defendants appeared specially for that purpose only. Twenty days having expired after service of summons before the motions were set for hearing, defendants' default was entered and default judgment rendered.

Subsequently defendants' motion to set aside the default and judgment was made and granted, and plaintiff appealed. This court affirmed the trial court's action calling attention to the fact that under subdivision 1 of section 6719, Revised Codes of 1907 (now sec. 9322, Rev. Codes 1935) a default judgment could be had "if the defendant fail to answer the complaint or *to challenge the jurisdiction of the court,* as follows: * * * *if no*

answer, demurrer, *motion, or special appearance, coupled with a motion*" has been filed in time, "or on [no] motion * * * to challenge the jurisdiction of the court, has been made and filed * * *."

The court said:

"* * * If it is shown that the attorney has no authority to represent the party for whom he assumes to act, he will not be permitted to act further, and if he is prosecuting the action without the permission of the ostensible plaintiff, whom he professes to represent, the action will be dismissed. Even in the absence of such a statute the court has the inherent power, either on its own motion or on motion of a party to the action, to require an attorney to produce evidence of his authority whenever there is reasonable ground to apprehend that he is proceeding to act without authority of the party he assumes to represent. * * *

"The question arises, then: Does the motion challenge the jurisdiction of the court? The term 'jurisdiction,' as used in the statute, is the power to hear and determine the particular case. This power is called into activity by the commencement of the action by a party who invokes it, to enforce a claim against the defendant, or to redress or prevent a wrong done or being done by him. The action is commenced by the filing of a complaint. This must be the voluntary act of the plaintiff. He thus submits his cause for adjudication. No one else can do this for him, unless he is a minor, or an incompetent ward, under the control of a guardian. Even then, in contemplation of law, the action is that of the ward. When, therefore, it is shown that an action has been brought by another as an attorney in the name of the plaintiff without authority, the power of the court to proceed to adjudication of it ceases. The defendant cannot lawfully be held to answer or make defense. He is at liberty to defend an action brought against him if he chooses, but may abstain from making any defense. He is entitled to notice by service of process, but cannot be brought into court

.and required to defend against his will. Much less may he be lawfully brought into court to defend an action by one who is not the owner of the cause of action brought against him. By their motion defendants sought to advise the court that it had not properly acquired jurisdiction of the cause of action alleged in the complaint, and thus that it was without power to proceed to judgment. In other words, they sought to uproot the action entirely and summarily end it. In this sense the motion .challenged the jurisdiction, within the meaning of the statute. This conclusion requires an affirmative answer to the question ,submitted by counsel.''

In the instant case the question is not of counsel's original authority to bring the action, but of his continuing authority to proceed with it after the termination of the guardianship had been shown to the court. Consequently the question is not of the court's jurisdiction over the action or over the plaintiff, that jurisdiction having been conferred while the guardian and counsel had the authority to do so, but of its jurisdiction to proceed with the trial, where the authority of the guardian and of counsel selected by him has expired but they still assert that authority, thus negativing other authorization.

The situation here being, not an absence of authority to initiate the action, but a termination of that authority by force of law, the proper procedure is not the dismissal of the action, but the stay of proceedings until further authority is shown for its maintenance.

It is not a mere technicality to insist that a person's rights may not be litigated without his authority, for that is an inherent right guaranteed by the due process clauses of federal (Fifth Amendment; Fourteenth Amendment, sec. 1) and state Constitutions (Art. III, sec. 27), and by Code section 8988, supra. It is no answer to say that a volunteer may profess to represent him, in the expectation that if he is successful the party in interest may ratify his action and if he is unsuccessful the party in interest may disavow it; for his interests may be irreparably damaged during the unauthorized suit. Furthermore, the

opposing party is entitled to know that the litigation is actually authorized by the party in interest, so as to bind that party regardless of the result; and that is the reason for section 8994, Revised Codes, as this court pointed out in *Missoula Belt Line R. Co.* v. *Smith,* supra.

It is our conclusion, therefore, that upon proof of the plaintiff's majority and the resultant termination of the guardian's authority, and upon the above facts which removed any possible presumption that counsel had direct authorization from plaintiff, the court should have stayed all proceedings until such authorization was shown or until it was otherwise shown that the plaintiff had assumed control of the litigation, either personally or by counsel authorized by him. This is not intended as a criticism of counsel, for there is no question of his good faith, and the point seems never to have been directly determined by this or any other court in a similar situation, so far as we have been able to find. But it seems clear that under the circumstances neither the trial court nor this court can have any jurisdiction to adjudicate the rights of the plaintiff, either beneficially or adversely to him until he is shown to have authorized the maintenance of the suit after his majority.

However, we now meet the objection that if counsel's authority to represent plaintiff had terminated before trial, as above decided, the notice of appeal, which was served upon him for plaintiff, did not confer jurisdiction upon this court to consider the appeal. Section 9733, Revised Codes, provides that the appeal is taken by filing the notice of appeal with the clerk of the trial court, and by service ''on the adverse party, or his attorney.'' Section 9783, Revised Codes, provides that service shall be made upon the attorney if the party has one; otherwise, of course, it must be made upon the party; but the same section provides that if a party who has appeared resides out of the state and has no attorney in the action, service may be made on the clerk for him. The matter is not a mere technicality, but is jurisdictional; we must therefore conclude that the objection is good, and that as plaintiff no longer had an attorney in the

action, the service upon the former attorney was void, and the appeal must be dismissed. Accordingly it is so ordered.

ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. JUSTICE ADAIR:

I dissent. I read both the record and the law somewhat differently from what is expressed in the majority opinion.

This is a suit in equity. The plaintiff, Merle Mitchell, an infant, by his guardian, commenced the suit against the defendant, Madilon McDonald. The plaintiff, Merle, seeks to remove a cloud upon the title to residential property in Philipsburg cast by the adverse claim of Madilon McDonald to an undivided one-half interest therein. Plaintiff's complaint was filed by Edwin T. Irvine, Esq., as the attorney at law for plaintiff.

The defendant, Madilon McDonald, appeared in the action by her husband and attorney, J. J. McDonald, of Philipsburg, who filed an amended answer and cross-complaint wherein was brought into the case, and named as a party defendant, one Mary C. Mitchell, she being the stepmother of the plaintiff, Merle. In her cross-complaint Madilon McDonald pleaded that the defendant Mary C. Mitchell adversely claims an interest in the property in question and prays that the court adjudicate such adverse claim of the defendant Mary C. Mitchell.

The plaintiff, Merle, through his attorney Edwin T. Irvine, Esq., filed a reply. The cause proceeded to trial before the court without a jury on the complaint of plaintiff, the amended answer and cross-complaint of Madilon McDonald and plaintiff's reply thereto. The defendant Mary C. Mitchell did not appear and her default was entered on motion of the defendant and cross-complainant, Madilon McDonald. The issues were, by the trial court, found for the plaintiff, Merle, and from the judgment entered in plaintiff's favor the defendant and cross-complainant has attempted to appeal.

While the majority opinion holds that this court has acquired no jurisdiction to hear or determine the attempted appeal and

can only dismiss the proceeding, yet the court, without jurisdiction so to do, makes exhaustive inquiry into various specifications assigned and contentions made by Madilon McDonald herein.

Seizing upon the fact that twenty days before the trial the plaintiff became of age, Madilon McDonald, in the trial court, unsuccessfully moved "that plaintiff's case be dismissed." The district court denied the motion. The majority opinion inquires into the correctness of the district court's aforesaid ruling and announces, what I consider to be questionable rules of practice and unsound, as well as most dangerous and far-reaching principles of law.

To my mind it was wholly immaterial whether, *on the day of the trial,* plaintiff then was an adult or an infant. It mattered not if the authority of plaintiff's guardian had terminated. Such facts or conditions gave rise to no right in Madilon McDonald to question, in this court, the authority of plaintiff's attorney to represent plaintiff in this cause. These matters were not in issue in the trial court. They are not in issue here.

In paragraph 1 of Madilon McDonald's cross-complaint she alleged that plaintiff "is a minor, under the age of twenty-one years and that C. H. Degenhart is now the duly appointed, qualified and acting Guardian of the estate of said minor, and as such guardian brought this action for and on behalf of" plaintiff. In paragraph 4 of his reply "the plaintiff admits the allegations of paragraph 1 of the said defendant's cross-complaint." Thus is inquiry precluded by the admissions in the pleadings of the facts exactly as they are alleged.

Under the admissions in the pleadings, the testimony adduced, respecting the age of the plaintiff at the day of the trial; respecting the contents of the letters of guardianship issued to C. H. Degenhart and the testimony of the clerk of the court that such letters had not been revoked, were each and all matters foreign to any issue in the case. Such evidence was wholly immaterial. It has no place in this record. It is but a red herring dragged across the trail. With it we should not be concerned. By it we must not be misled.

310

This action involves the title to plaintiff's property. Plaintiff had the right to commence the suit. He had the right to prosecute the suit. He had a right to proceed to trial. At the trial he had a right to present to the court material and competent evidence in support of his suit. Throughout the proceedings, from their very inception to their final termination, he had the right to be represented by counsel. These are rights which every plaintiff has, be he adult or infant. What matters it, then, whether *on the day of the trial* plaintiff then was an infant or an adult? That he was there represented by counsel protecting his rights and interests is sufficient.

When this suit was commenced, plaintiff was an infant. His rights were safeguarded and protected by a duly appointed guardian and by a duly licensed attorney at law. His action was commenced in manner required by statute. His complaint is properly entitled "Robert Joseph Mitchell (otherwise known as Merle Mitchell), a minor, by his Guardian, C. H. Degenhart, Plaintiff vs. Madilon McDonald, Defendant." Edwin T. Irvine, Esq., appears as the attorney of record for plaintiff throughout the entire case from the filing of plaintiff's complaint in the court below to the preparing and filing of two briefs in this court. Attorney Irvine was personally present and orally argued plaintiff's cause before this court. At no time and at no stage of plaintiff's case, either in the court below or in this court, has attorney Edwin T. Irvine failed to be on the job representing plaintiff, fighting for him and protecting his rights and estate.

The defendant, Madilon McDonald, likewise has been represented in this action by counsel, first, by her husband, J. J. McDonald, and subsequent to his disbarment (*In re McDonald*, 112 Mont. 129, 113 Pac. (2d) 790), by S. P. Wilson, Esq. In her amended answer and cross-complaint Madilon McDonald claims ownership of an undivided one-half interest in the dwelling house left by plaintiff's mother at her death. She seeks affirmative relief against plaintiff. She asks for partition. She requests the court to order the dwelling house sold and the proceeds of

the sale divided. She demands one-half of these proceeds. She testified such half to be of the reasonable value of about four or five hundred dollars. The remaining half she would deplete by taking therefrom her costs, including an item of $100 claimed for fees for her attorneys and an item of $150 claimed as the reasonable worth of an abstract of title to the property typed by herself and certified to by her husband, J. J. McDonald.

Thus, should the cross-complainant, Madilon McDonald, prevail, plaintiff's estate would go on the block at forced sale and the proceeds of such sale would practically all go to Madilon McDonald. Plaintiff would thereby be put out of both home and purse.

When plaintiff's reply was filed and his case became at issue, he was still a minor. Two months thereafter and but twenty days before the trial occurred, the plaintiff became of age. Much ado is made about plaintiff's twenty-first birth anniversary. What possible difference can it make as to whether, at the time of trial, plaintiff was then a minor of the age of twenty years, or an adult of the age of twenty-one years plus twenty days? Irrespective of his age, whether young or old, infant or adult, plaintiff's case was at issue and he had the right to have it tried.

The record shows the "cause came on for trial regularly" and "Edwin T. Irvine, Esq., appeared on behalf of plaintiff in the action and S. P. Wilson, Esq., appeared on behalf of the defendants in the action." Thus was plaintiff, by his counsel, present at the trial. This right is accorded him by the law. (*State ex rel. Rubin* v. *District Court*, 62 Mont. 60, 65, 203 Pac. 860.)

The trial proceeded with plaintiff represented throughout by Edwin T. Irvine, Esq., and the cross-complainant Madilon McDonald represented throughout by S. P. Wilson, Esq. The plaintiff's former guardian, C. H. Degenhart, appeared at the trial and testified as a witness for plaintiff, as did E. J. Donnelly, the clerk of the court; two deeds were admitted in evidence, and plaintiff rested his case.

312

Madilon McDonald, her husband J. J. McDonald and plaintiff's father Harold Mitchell, then testified as witnesses on behalf of Madilon McDonald; three deeds and the abstract of title were received as exhibits; two of such deeds having already been introduced in evidence by plaintiff, and Madilon McDonald then rested her case.

There is nothing novel, there is nothing unusual about a youthful plaintiff becoming of age *pendente lite*. The course of the law may be slow but "Time Marches On." Many times in the past have parties to lawsuits become of age before the litigation in which they were involved had terminated. Many times will this occur in the future. The merits of the lawsuit and the progress of the litigation are not affected by such an ordinary and simple event as a twenty-first birth anniversary.

"The fact that a minor plaintiff attains majority during the pendency of an action in his name by next friend or guardian is not ground for abatement or dismissal of the action; but the proper procedure in such case is to strike the name of the guardian or next friend from the record and leave the cause stand in the name of the real party, though the failure to do so is an irregularity which does not affect the substantial rights of the other party." (6 Bancroft's Code Practice & Remedies, sec. 4865, p. 6381.) Nor will an action by a personal representative be dismissed on account of his discharge following distribution of the assets of the estate; the cause of action passes to the distributees. (*Heywood* v. *Ogden Motor Car Co.*, 71 Utah 417, 266 Pac. 1040, 62 A. L. R. 1232.) In the instant case there was no suggestion that the name of the guardian be stricken. The failure to strike his name is a mere irregularity which does not prejudice the defendant and cross-complainant, Madilon McDonald, in any manner and which cannot affect any of her substantial rights. The statute expressly provides that "the action * * * may be continued in the name of the original party." (Sec. 9086, Rev. Codes.)

Thus on the failure to strike the guardian's name nothing

happens. The litigation, including the trial, proceeds exactly as it would had no twenty-first birth anniversary occurred.

After all, September 20, 1941, was a day to be celebrated by plaintiff. It was the anniversary of his birth. It was the day he became freed of the disabilities of infancy. It was the day he became "free and 21." It was the day of his emancipation. His powers and authority increased. He could now stand on his own and act with a free hand. He could now ratify contracts and engagements theretofore made by himself or his representatives, or, "within a reasonable time afterwards," he could disaffirm same. (Sec. 5680, Rev. Codes.) Plaintiff has not disaffirmed the acts done herein in his behalf by his representatives including his attorney. A reasonable time has elapsed. By his silence and acquiescence plaintiff must be held to have ratified their acts.

Instead of following the simple procedure of moving to strike the name of plaintiff's guardian, Madilon McDonald sought to urge, as a bar to plaintiff's cause of action, the fact that plaintiff had become an adult *pendente lite,* and at the conclusion of all the evidence in the case she made a motion "that plaintiff's case be dismissed." Madilon McDonald assigns as grounds for her motion: (1) That plaintiff is an adult; (2) that the guardianship has terminated, and (3) that plaintiff's former guardian "Degenhart is not a party to this action in any sense." None of these grounds is valid. The emancipation of the plaintiff did not put an end to his lawsuit; it did not bar it; it did not abate it. The guardian, C. H. Degenhart, never was a party to this action, either before or subsequent to the emancipation of plaintiff. This suit was commenced in the name of the plaintiff Robert Joseph Mitchell, otherwise known as Merle Mitchell, who was and is the real party in interest. The action has since continuously been prosecuted in the name of such real party in interest. The guardian, C. H. Degenhart, was not the real party in interest, nor was he even a party to the action. He simply took care of the

314

ward's interests in this action, as he did in the case of *Mitchell* v. *Columbia Casualty Co.*, 111 Mont. 88, 106 Pac. (2d) 344, heretofore considered by this court. "The real party in interest is the party who is to be benefited or injured by the judgment in the case, * * *. A guardian is not permitted to bring suit in his own name, and in his individual capacity, for money or other property belonging to the ward. He appears in the action simply to manage and take care of the interests of the ward or infant for whom he appears; he does not thereby become a party to the action." (1 Bancroft's Code Pleading, secs. 120, 121, pp. 232-234).

Section 9067, Revised Codes, requires, with certain exceptions, that every action must be prosecuted in the name of the real party in interest, but the plaintiff here has fully complied with such statute the object of which is simply to save a defendant, against whom a judgment is obtained, "from further harassment or vexation at the hands of other claimants to the same demand, and to prevent a claimant from making a simulated transfer, and thus defeating any just counterclaim or set-off which defendant would have to the demand if pressed by the real owner. But the right of the defendant under the statute is limited to its purpose." (1 Bancroft's Code Pleading, sec. 122.)

The trial court found that the defendant, Madilon McDonald, has no right, title or interest in the property. And "the question whether the plaintiff is the real party in interest does not concern defendants, who have no defense." (1 Bancroft's Code Pleading, sec. 122, p. 236.)

On the day of the trial it mattered not whether plaintiff was then an adult or an infant. Mr. Irvine represented plaintiff at the trial. He conducted plaintiff's litigation. He protected plaintiff's property and interests. He won plaintiff's lawsuit. A decree was entered in his client's favor. Plaintiff has manifested no dissatisfaction with the outcome of his case. He has never questioned the authority of his attorney, Mr. Irvine. Plaintiff became of age in 1941, yet here, in the year

1943, Mr. Irvine continues to represent him in this action and in this court as his attorney. Apparently Mr. Irvine has done right well by plaintiff and plaintiff is content to let well enough alone and to trust Mr. Irvine to continue to represent plaintiff's interests until the final termination of the litigation. Mr. Irvine's authority to represent plaintiff as his attorney was never questioned in the trial court and it has never been properly questioned in this court. It has never been an issue in the case.

It is the losing party, Madilon McDonald, who is dissatisfied with the decree. It is she who comes here seeking relief therefrom. The statute provides a method whereby in a proper case the authority of an attorney may be questioned by the adverse party. This statutory method has not been followed. Had it been followed and had Mr. Irvine's authority to represent plaintiff been made an issue, I have no doubt but that proper and formal warrant of attorney from plaintiff would have been produced. Without properly raising the issue and giving counsel opportunity to meet it, Mr. Irvine's authority to represent the plaintiff cannot here be questioned. Mr. Irvine is presumed to have authority to act for and represent plaintiff until the contrary is shown. (*Missoula Belt Line R. Co.* v. *Smith,* 58 Mont. 432, 193 Pac. 529, 531.)

"The universal rule is, where an attorney appears and undertakes to act for another in a capacity, and for a purpose, within the scope of the ordinary powers of a duly licensed practitioner, his authority to so act will be presumed, and in the absence of a sufficient showing to the contrary, the adverse party, having no notice or ground of suspicion, may act on that presumption. * * * So, after recovery of judgment the attorney who procured it * * * may appear and act for the judgment creditor in ulterior proceedings, and the court will presume that he is authorized to so act, in the absence of any showing to the contrary. * * * The authority of an attorney to represent a party has been presumed from the filing of pleadings. * * * It is immaterial whether the litigant for whom the attorney appears is a natural, or an artificial person, * * * or an infant * * *

or even though the suit be entered by one person to the use of another. * * *'' (1 Thornton on Attorneys at Law, sec. 230,. pp. 415-419.)

In *Osborn* v. *Bank of United States,* 9 Wheat. 738, 829, 830,. 6 L. Ed. 204, the Supreme Court of the United States said:

''Natural persons may appear in court, either by themselves. or by their attorney. But no man has a right to appear as the attorney of another, without the authority of that other. In. ordinary cases, the authority must be produced, because there is, in the nature of things, no prima facie evidence that one man is in fact the attorney of another. The case of an attorney-at-law, an attorney for the purpose of representing another in court, and prosecuting or defending a suit in his name, is some-what different. The power must indeed exist, but its production has not been considered indispensable. Certain gentlemen, first. licensed by government, are admitted, by order of court, to. stand at the bar, with a general capacity to represent all the suitors in the court. The appearance of any one of these gentle-men in a cause, has always been received, as evidence of his authority; and no additional evidence, so far as we are informed, has ever been required. This practice, we believe, has existed from the first establishment of our courts, and no departure from it has been made in those of any state, or of the Union. * * *

''The universal and familiar practice, then, of permitting gentlemen of the profession to appear, without producing a. warrant of attorney, forms a rule, which is as applicable in reason to their appearance for a corporation, as for a natural person. Were it even otherwise, the practice is as uniform and as ancient, with regard to corporations, as to natural persons. No case has ever occurred, so far as we are informed, in which the production of a warrant of attorney has been supposed a necessary preliminary to the appearance of a corporation, either as plaintiff or defendant, by a gentleman admitted to the bar of the court. The usage, then, is as full authority for the case of a corporation, as of an individual. * * *

"No reason is perceived why the courts of chancery should be more rigid in exacting the exhibition of a warrant of attorney than a court of law; and since the practice has, in fact, been the same in both courts, an appellate court ought, we think, to be governed in both by the same rule."

In *Hardin* v. *Ho-yo-po-nubby's Lessee*, 27 Miss. 567, 579, the Supreme Court of Mississippi said: "An attorney is an officer of court, and responsible to the court for the propriety of his professional conduct, and the proper use of the privileges he has as such. * * * He is permitted, by almost universal practice in this country, to do so under verbal retainer, and it is only in cases of clear want of authority or abuse of his privilege that he is held to be incompetent to institute a suit or represent a party in court. The presumption is in favor of his authority, and though he may be required to show it, yet if he acts in good faith and the want of authority is not manifest, he will not be held to have acted without authority, because it is not shown according to strictly legal rules. If this were not so, the greatest inconvenience in practice would continually occur both to clients and attorneys; for suits are frequently instituted by attorneys under the authority of letters from their clients, who are strangers, and whose handwriting is unknown to them, and could not be proved without great trouble and delay. * * * All that is required to be shown in such cases in the first instance, is, that the attorney has acted in good faith and under an authority appearing to be genuine, though informal."

I cannot subscribe to the novel theories advanced by the majority of this court to the effect that the day plaintiff became of age "a definite break occurred" in the "continuity" of the employment of Edwin T. Irvine, Esq., as attorney for plaintiff in this action; that on that day plaintiff's attorney was *ipso facto* directed by the law to cease firing; that on that day plaintiff's attorney was "automatically" relieved of his command of the litigation; that from that day forward plaintiff had "no representation in the suit, and the proceedings should be suspended until the defect of representation was remedied;" that upon

the arrival of that day plaintiff was required to elect "to proceed by appearing, obtaining leave to file, and filing an amended complaint" in *his* own name; that before the arrival of that day it became the duty of the guardian to make to plaintiff "the necessary disclosure and explanation to make the transition effective," and "that he did so * * * is entirely negatived by the insistence of the guardian and attorney that the guardian and therefore the attorney under his authority were still authorized to conduct and were still conducting the litigation under that authority;" that "upon proof of the plaintiff's majority and the resultant termination of the guardian's authority * * * which removed any possible presumption that counsel had direct authorization from plaintiff, the court should have stayed all proceedings until such authorization was shown or until it was otherwise shown that the plaintiff had assumed control of the litigation either personally or by counsel authorized by him."

Again may I inquire: Exactly who became twenty-one on September 20, 1941? Whose birthday was then celebrated? Was it that of the appellant, Madilon McDonald, or was it that of respondent, Merle Mitchell? The appellant may not seize upon the emancipation of respondent as a justification for ousting respondent's attorney and walking away with his lawsuit?

After declaring in effect, if not in words, that plaintiff's attorney, after September 20, 1941, became an unauthorized intermeddler, the majority opinion seeks to remove the sting and stigma from its holding by saying: "This is not intended as a criticism of counsel, for there is no question of his good faith, and the point seems never to have been directly determined by this or any other court in a similar situation, so far as we have been able to find." The answer is, "Seek and ye shall find." Here are the decisions. Here is the law:

"An action brought by a guardian or next friend is not abated by the attainment of majority of the ward or infant *pendente lite.*" (1 C. J. S., Abatement and Revival, sec. 110, page 155.)

"An action * * * shall not abate by death, or other disability

of a party, or by the transfer of any interest therein * * *;. and in case the action has been begun * * * the court shall, on motion, allow the action or proceeding to be continued by * * * his representatives or successors in interest. In case of any transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." (Sec. 9086, Rev. Codes.)

In *Johnson* v. *Alexander*, 66 Okl. 128, 167 Pac. 989, 991, the court said: "It is the contention of the defendants that the court erred in not dismissing said cause when it was disclosed by the evidence during the trial that the plaintiff had reached his majority. The rule seems to be well established that where an action is commenced by a minor, by his next friend or guardian, and the minor reaches his majority during the pendency of the cause, the cause does not abate, and the arriving at majority by the minor is not grounds for dismissal of said. cause. (*Bernard* v. *Pittsburg Coal Co.*, 137 Mich. 279, 100 N. W.. 396; 22 Cyc. 671".

In *Lambert* v. *Corbin*, 194 Ky. 373, 239 S. W. 453, 454, the court said: "The first contention is that the trial court erred in refusing to instruct the jury to find for the defendant at the conclusion of all the evidence. It is not said that there was not sufficient evidence to take the case to the jury on its merits, but it is argued that, as the suit was brought in the name of appellee by his next friend, and appellee arrived at the age of 21 before the trial, but the name of the next friend was not stricken from the proceedings, the motion should have prevailed. This contention in our opinion is not maintainable. Section 35, subsection 3, of the Civil Code provides that suits of an infant, in certain designated cases must be brought by his next friend. However, in all such cases the infant is himself the plaintiff. This was held in *Clements* v. *Ramsey, etc.*, 4 S. W. 311, 9 Ky. Law Rep. 172. Upon the appellee's becoming of age the next friend was no longer a necessary party, and the action as to him abated. The appellee having been the plaintiff from the incep-

tion of the action, the fact that the next friend's name was not stricken from the proceeding did not, in our opinion, invalidate the proceeding, or entitle appellant to a directed verdict."

In *Bernard* v. *Pittsburg Coal Co.*, 137 Mich. 279, 100 N. W. 396, 399, the court said: "When this suit was commenced, plaintiff was a minor, and it was brought in his name by his father as next friend. When the trial occurred plaintiff had reached his majority, and it is insisted that the suit cannot be prosecuted under the original declaration. It is well settled that plaintiff, on arriving at his majority, may, if he elects, prosecute a suit commenced when he was a minor by his next friend. [Citing cases.] It seems proper in such a case by a formal amendment of the record to show that the suit is prosecuted by plaintiff himself. This may be done either by striking out the name of the next friend (see *Sims* v. *Renwick* [25 Ga. 58] ; *Lasseter* v. *Simpson,* supra [78 Ga. 61, 3 S. E. 243] ) or by a suggestion of record that plaintiff has attained his full age (see *Shuttlesworth* v. *Hughey; Clements* v. *Ramsey,* supra). We should not, however, reverse a judgment for a failure to make such an amendment, which it seems may be made as a matter of course (see *Clements* v. *Ramsey,* supra), unless that failure was in some manner prejudicial to defendant."

In *McCarthy* v. *Anable,* 169 Misc. 595, 7 N. Y. Supp. (2d) 887, 890, the court said: "The rule adducible from these authorities is that where no suggestion or motion is made during the pendency of the action the validity of the proceedings or the judgment entered will not usually be affected by a failure to strike out a guardian for an infant party who has become of age. Where prejudice may be shown to an adverse party by the failure of the infant himself to make the formal correction of the record and prosecute in his own name, the remedy after judgment would seem to be afforded by a motion by the adverse party for an order *nunc pro tunc* striking the guardian from the action, as was suggested by the dictum of *Bernard* v. *Pittsburg Coal Co.,* supra."

In *Cahn* v. *Schmitz,* (1941), 56 Ariz. 469, 108 Pac. (2d) 1006,

1008, the court said: "It is next said that when the written judgment was entered March 11, 1940, William Schmitz, the plaintiff, had reached his majority; that his guardian *ad litem's* authority had terminated, and that 'she is no longer entitled to judgment herein.' * * * While the plaintiff's pleadings make the guardian *ad litem* the plaintiff, under the statute the action is by the infant and should be brought and prosecuted in his name. However, no exception has been taken to this departure from the statute. The case has proceeded thus far without any objection. The error of the pleader, in assuming that the action was in the name of the guardian *ad litem* instead of that of the minor child, in no way affects the merits of the case. The action was the minor's action and the judgment is his also. The fact that the guardian *ad litem,* who was plaintiff's mother, took an active part in the trial of the case, as well as in securing the entry of proper judgment, does not change the law that makes such action the infant's. After plaintiff reached his majority, the name of his guardian *ad litem* in the trial of the action and in subsequent orders should have been dropped but that this was not done can in no wise affect the merits of the case. (*Johnson* v. *Alexander,* 66 Okl. 128, 167 P. 989)". (See, also, *Smith* v. *Mingey,* 76 N. Y. Supp. 194, 72 App. Div. 103.)

In *Hartford Accident & Indemnity Co.* v. *Goldberg,* 178 Okl. 75, 61 Pac. (2d) 704, 706, the court said:

"During the pendency of this action, the minor, Lester Goldberg, reached his majority and had disappeared, and not even his guardian had seen him for a long time before he became of age, nor had he taken any steps after attaining his majority which might be taken as an election to proceed with the action in his own right. Contention is made by plaintiff in error that in this state of case the action abated until the ward came into court and made some affirmative election to proceed with the same. * * *

"The same guardian and the same attorneys continued to participate in the case, and at least the presumption would be in favor of and not against the authority of said attorneys to

represent said plaintiff in the absence of a disaffirmance on the part of the plaintiff, and in such situation the court would be warranted in presuming an election to proceed. (*Webb* v. *Harris,* 32 Okl. 491, 121 Pac. 1082, Ann. Cas. 1914A, 602; *Johnson* v. *Alexander,* 66 Okl. 128, 167 Pac. 989; *Phelan* v. *Stockyards Bank,* 168 Okl. 232, 32 Pac. (2d) 270.''

Throughout the entire case Madilon McDonald recognized the authority of Mr. Irvine to act for and represent plaintiff in this action. Long after the trial, appellant recognized Mr. Irvine's continuing authority to act as attorney for plaintiff. Madilon McDonald's notice of appeal is addressed: ''To the above named plaintiff and Edwin T. Irvine, his attorney.'' By this notice so directed she brought Mr. Irvine before the bar of this court. The notice of appeal was never personally served on plaintiff. If Mr. Irvine was and is without authority to represent the plaintiff in this case after September 20, 1941, then it follows that he was and is equally without authority thereafter and in July, 1942, to accept service on plaintiff's behalf of the notice of appeal herein. No authority in Mr. Irvine spells no service of the notice on appeal on plaintiff, and no service of the notice on plaintiff spells no jurisdiction in this court to hear or determine the attempted appeal. By what right comes plaintiff here? It would seem that by her conduct is Madilon McDonald estopped to deny the authority of attorney Irvine to act for or to represent respondent as the latter's attorney in this litigation.

MR. JUSTICE MORRIS, concurring specially:

I agree that the appeal should be dismissed but do not concur in all that is said in either the majority or minority opinions. It is my view that it is the duty of a guardian of a minor and the attorney regularly employed in an action pending at the time the minor reaches majority to continue to protect the minor's interests, until their respective powers to act in the premises are expressly revoked by the minor on reaching majority. On this point I think the better authorities and sounder reasons are with Justice Adair in his separate opinion, and I further agree with Justice Adair that if attorney Irvine

ceased to be the attorney of the plaintiff at the very moment the minor reached majority, then the notice of appeal was ineffective for any purpose and that the appeal is not regularly before us, and any judgment rendered in the matter decides nothing. (*Mitchell* v. *Banking Corporation,* 81 Mont. 459, 264 Pac. 127.)

Rehearing denied April 27, 1943.